ATTORNEY FOR APPELLANT
Amy Karozos
Greenwood, Indiana

ATTORNEYS FOR APPELLEE
Robert J. Henke
Donna Lewis
Indiana Department of Child Services
Indianapolis, Indiana

## In the
## Indiana Supreme Court



FILED

Mar 13 2012, 2:32 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1107-JC-416

IN THE MATTER OF: K.D. & K.S.

S.S. (FATHER),

*Appellant (Respondent below),*

v.

THE INDIANA DEPARTMENT OF CHILD
SERVICES,

*Appellee (Petitioner below),*

AND

CHILD ADVOCATES, INC.,

*Co-Appellee (Guardian Ad Litem).*

———————————————

Appeal from the Marion Superior Court, Nos. 49D09-0911-JC-050107 & 49D09-0911-JC-050108
The Honorable Marilyn Moores, Judge
The Honorable Beth Jansen, Magistrate

———————————————

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1004-JC-462

———————————————

**March 13, 2012**

**David, Justice.**

We have granted transfer in this case where a party to a CHINS matter requested a fact-finding hearing and was instead given a contested dispositional hearing. We write to clarify any ambiguity that exists regarding the differences between a CHINS adjudication and the procedural due process safeguards that are in place for parties to a CHINS disposition. We hold that a parent who requests a contested fact-finding hearing has a due process right to that hearing.

### Facts and Procedural History

S.S. (Stepfather) and K.S. (Mother) have been married for five years. Mother has two children, K.D., who was born on June 19, 1992, and K.S., who was born on April 1, 1995. In 2009, the Department of Child Services (DCS) was contacted when letters that K.D. wrote to her boyfriend surfaced and contained allegations of inappropriate contact of a sexual nature between K.D. and Stepfather. K.D. explained that she wrote the letters because she was angry at Stepfather and that he never touched her inappropriately. During the course of its investigation, DCS learned that fifteen years earlier Stepfather was convicted of child molesting as a Class A felony and criminal confinement as a Class C felony. Stepfather was incarcerated but never completed any sex-offender treatment. By refusing to complete his sex-offender treatment program, Stepfather violated his probation and was required to serve additional time incarcerated. When asked about these convictions, Stepfather blamed the then twelve-year-old victim and the victim's mother, refused to take responsibility for the child molestation, and indicated his convictions were a result of a plea agreement to avoid additional convictions and additional jail time.

DCS, Mother, and Stepfather entered into a program of informal adjustment where Mother and Stepfather agreed to maintain an appropriate home and complete home-based counseling, and Stepfather agreed to complete a sex-offender program. The program required Stepfather to complete a sexual history questionnaire, participate in group counseling sessions, and complete a polygraph examination. Stepfather did not complete the sexual history questionnaire or the polygraph, and he did not regularly participate or attend the group counseling sessions. At the end of the six-month term of the Informal Adjustment, DCS requested additional time for Stepfather to complete the sex-offender treatment.

2

In October 2009, DCS held a child and family team meeting to address Stepfather's non-compliance. Stepfather, Mother, DCS case manager, DCS supervisor, the home-based counselor, and Dr. Trimble, Stepfather's sex-offender counselor, all attended the meeting. At that meeting, Dr. Trimble informed those present that Stepfather failed to attend eight of the weekly sessions between July 30 and October 26, 2009. When he was attending the group therapy sessions, Stepfather would respond, "I don't want to participate." When Dr. Trimble confronted him, Stepfather told him, "I'm done. I don't need this, and I'm getting a lawyer."

On November 2, 2009, DCS filed a petition alleging that K.D. and K.S. were children in need of services (CHINS) as defined in Indiana Code section 31-34-1-1 (2008). On December 10, 2009, Mother admitted the children were CHINS. Specifically, Mother admitted,

> On or about October 30, 20009 the Marion County Department of Child Services (MCDCS) determined by its Family Case Manager (FCM) [], these children to be in need of services because their mother, [K.S.] and their stepfather, [S.S.], have been involved with the DCS through an Informal Adjustment but have failed to successfully complete all services under the agreement. Specifically, [Stepfather] is an untreated sexual offender and has not yet completed his sexual offender treatment, but [Mother] continues to allow him to live in the home. Therefore the family can benefit from services.

Stepfather continued to deny the allegations that the children were CHINS. The court set the matter for a dispositional hearing for Mother and a contested fact-finding hearing for Stepfather. After Mother's admission, but prior to the contested fact-finding hearing scheduled for Stepfather, this Court decided In re N.E. v. DCS, 919 N.E.2d 102 (Ind. 2010). Based on its interpretation of In re N.E., the trial court converted the contested fact-finding hearing scheduled for Stepfather into a contested dispositional hearing. The trial court determined that a contested fact-finding hearing as to Stepfather was not required.

At the contested dispositional hearing, the juvenile court swore in witnesses, took testimony, allowed Stepfather's counsel to cross-examine witnesses, allowed Stepfather's counsel to challenge the admissibility of evidence, allowed Stepfather's counsel to offer exhibits and witnesses, asked for closing arguments, allowed for proposed findings, and took the matter under advisement.

At the conclusion of the hearing, the court ordered Stepfather to leave the family home for the safety of the children. DCS was ordered to immediately remove the children if Stepfather did not leave. Stepfather told the court, "I ain't going nowhere. You can forget that." Then the bailiff was instructed to have Stepfather leave the courtroom.

On April 5, 2010, the trial court entered findings of fact and conclusions of law, which held that the children had previously been adjudicated CHINS and that Stepfather was now ordered to complete a sexual-offender treatment program. The court ordered Stepfather to remain out of the home until further recommendation of the parties.

Stepfather appealed the juvenile court's order finding the children to be in need of services. A majority of the Court of Appeals found that Stepfather was denied due process by not receiving a fact-finding hearing. In re K.D. v. DCS, 942 N.E.2d 894, 901 (Ind. Ct. App. 2011). We granted transfer.

**Standard of Review**

A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." In re N.E., 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. Id. We reverse only upon a showing that the decision of the trial court was clearly erroneous. Id.

**I. The CHINS Adjudication**

There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven[1] different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not

_____

[1] These eleven different statutory circumstances are codified in Indiana Code sections 31-34-1-1 to 11.

4

receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court.  In re N.E., 919 N.E.2d at 105.

In this case, DCS alleged the children were CHINS under the general category of neglect as defined in Indiana Code section 31-34-1-1.  The statute reads as follows:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) The child needs care, treatment, or rehabilitation that;

(A)     The child is not receiving; and

(B)     Is unlikely to be provided or accepted without the coercive intervention of the Court.

Ind. Code § 31-34-1-1 (2008).

Most CHINS adjudications fall under what is commonly referred to in the juvenile courts as the neglect statute, Indiana Code section 31-34-1-1.  In fact, this is the statute under which the child N.E. was adjudicated a CHINS.  However, other statutes exist, all with different definitions of what constitutes a child being in need of services.  For example, a child could be alleged to be a CHINS because of physical or mental abuse[2] or sexual abuse.[3]  In some instances, a child can be adjudicated a CHINS, and the allegations do not mention any misconduct by the parent, such

---

[2] Ind. Code § 31-34-1-2 states as follows:
(a) A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and

(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.

(b) Evidence that the illegal manufacture of a drug or controlled substance is occurring on property where a child resides creates a rebuttable presumption that the child's physical or mental health is seriously endangered.

[3] Indiana Code sections 31-34-1-3, 31-34-1-4, and 31-34-1-5 all deal with sexual offenses and outline a number of criminal statutes that correspond with a CHINS adjudication based on various statutorily defined sexual offenses.

as a child endangering his or her own or another's health,[4] or simply a missing child.[5] A child could be adjudicated a CHINS if the parents fail to participate in school disciplinary proceedings.[6] Finally, a child can be adjudicated a CHINS due to being deprived of necessary nutrition or medical intervention[7] or being born positive for alcohol or other drugs.[8] However, in all cases, DCS still bears the burden of proving all three basic elements of each CHINS statute. Moreover, because DCS has to prove all three basic elements, each parent[9] has the right to challenge those elements.

Juvenile court judges are often faced with the challenge of balancing multiple factors and multiple voices in a CHINS case. Judges must uphold the due process rights of parents, apply the proper law, and take into account recommendations and input from the court appointed special advocate (CASA), DCS, parents, step-parents, guardians, grandparents, the child, and often several attorneys. By their very nature, these cases do not fit neatly defined guidelines.

Juvenile law is constructed upon the foundation of the State's *parens patriae* power, rather than the adversarial nature of *corpus juris*. Kent v. United States, 383 U.S. 541, 554 (1966). Indeed, juvenile court jurisdiction "is rooted in social welfare philosophy rather than in the *corpus juris*." Id. The purpose of the CHINS adjudication is to "protect the children, not punish parents." In re N.E., 919 N.E.2d at 106. The process of the CHINS proceeding focuses on "the best interests of the child, rather than guilt or innocence as in a criminal proceeding." Id. As previously mentioned, sometimes a child can be adjudicated a CHINS through no fault of the

---

[4] Id. § 31-34-1-6 states as follows:
A child is a child in need of services if before the child becomes eighteen (18) years of age:
   (1) the child substantially endangers the child's own health or the health of another individual; and
   (2) the child needs care, treatment, or rehabilitation that:
       (A) the child is not receiving; and
       (B) is unlikely to be provided or accepted without the coercive intervention of the court.
[5] Id. § 31-34-1-8 states as follows:
A child is a child in need of services if before the child becomes eighteen (18) years of age:
   (1) the child is a missing child (as defined in IC 10-13-5-4); and
   (2) the child needs care, treatment, or rehabilitation that:
       (A) the child is not receiving; and
       (B) is unlikely to be provided or accepted without the coercive intervention of the court.
[6] Id. § 31-34-1-7.
[7] Id. § 31-34-1-9.
[8] Id. § 31-34-1-10, -11.
[9] This opinion uses the word "parent" based on the facts of this case, but the statutes refer to a parent, guardian, or custodian, all of which are still applicable to this opinion.

parent, such as the missing child, or the child endangering his own health. Other times, only one parent may be responsible for a CHINS adjudication. For example, only the child's mother could be responsible for a child being born positive for alcohol or drugs. Sometimes, physical abuse of the child occurs at the hands of only one parent. Finally, situations arise when a CHINS adjudication is based on both parents' behavior, as is the case frequently under the "neglect" statute, Indiana Code section 31-34-1-1.

A parent may admit or deny the allegations of the CHINS petition. Ind. Code § 31-34-10-6. If the parent does not admit the allegations, the juvenile court shall hold a fact-finding hearing. Id. § 31-34-11-1. At the fact-finding hearing, the sole issue before the court is whether the child is a CHINS based upon the criteria in the CHINS statute. T.Y.T. v. Allen County Div. of Family & Children, 714 N.E.2d 752, 756 (Ind. Ct. App. 1999).

Apparent conflict arises from Indiana code section 31-34-10-8, which states, "If the parent, guardian, or custodian admits [the allegations in the CHINS petition], the juvenile court shall do the following: (1) Enter judgment accordingly. (2) Schedule a dispositional hearing." It thus appears from a reading of the section that if a parent admits his or her child is a CHINS, judgment is entered. That would be in conflict with Indiana code section 31-34-11-1, which states the juvenile court shall hold a fact-finding hearing if the allegations of the petition have not been admitted. We discuss what to do when these statutes collide: when one parent wishes to admit and one parent wishes to deny the child is in need of services. "Where two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony." Patrick v. Miresso, 848 N.E.2d 1083, 1086 (Ind. 2006).

In this case, Mother admitted to not completing services and to allowing Stepfather, an untreated sexual offender, to live in the home with her children. Stepfather, however, denied that the children were CHINS and requested a fact-finding hearing, which DCS stated it believed was required. The trial court misinterpreted In re N.E. and believed a fact-finding hearing was unnecessary and scheduled a contested dispositional hearing. In In re N.E., this court was faced with determining if a child could be adjudicated a CHINS when allegations were made solely against a mother, and not a father. 919 N.E.2d at 104. In that case, DCS filed the CHINS petition alleging that Mother was unable to protect her children from domestic violence. Id. at

7

106. We held on the circumstances of that case, it was not necessary for the CHINS petition to make any allegations with respect to father. In this case, the issue is different.

In this case, DCS alleged K.D. and K.S. to be CHINS based on actions of both mother and father. "A CHINS adjudication focuses on the condition of the child." Id. at 105. Such adjudication "does not establish culpability on the part of a particular parent." Id. A CHINS adjudication is dependent on DCS proving by a preponderance of the evidence a number of statutorily defined criteria set forth by the General Assembly. However, we have no evidence in the record at a fact-finding hearing that Stepfather was an untreated sex offender, or how that made the children in need of services. This lack of a fact-finding hearing is why In re N.E. and the present case are distinguishable. The father in In re N.E. received a fact-finding hearing, while the Stepfather in the present case did not. The father in In re N.E. presented evidence and cross-examined witnesses at a fact-finding hearing. Our analysis of In re N.E. would have been markedly different had the father not been given a fact-finding hearing.

In re N.E. correctly stated, "[b]ecause a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage." 919 N.E.2d at 106. While a separate analysis as to each parent is not *always* required, it is sometimes necessary. We agree with the Court of Appeals majority that In re N.E. simply clarified "that a CHINS adjudication is not rendered 'as to Father' or 'as to Mother,' etc." In re K.D. v. DCS, 942 N.E.2d 894, 900 (Ind. Ct. App. 2011). In the present case, a separate analysis was necessary because allegations were made regarding each parent, and each parent could challenge that the coercive intervention of the court was necessary. The trial court's position was that a contested dispositional hearing was sufficient for Stepfather. Unfortunately, a contested dispositional hearing did not provide him the opportunity to contest the underlying CHINS adjudication.

Situations can exist where an admission by a parent would be incapable of providing a factual basis for the CHINS adjudication. For example, if parents are divorced or separated, one parent could not admit the child is a CHINS based on allegations of what occurred in the other parent's home, unless that parent had first-hand knowledge of what transpired. Such an attempted admission by the parent would likely fall short of being able to establish a factual basis

8

for the event that transpired. Furthermore, allowing this type of admission could lead to vindictive admissions, designed to attack the other parent in cases of parents who are divorced or are going through contentious separations. Speculation is not enough for a CHINS finding. D.H. v. Marion County Office of Family & Children, 859 N.E.2d 737, 744 (Ind. Ct. App. 2007). In such scenarios, a contested fact-finding hearing would be necessary to adjudicate the child a CHINS. In re N.E. does not stand for the proposition that anytime a parent makes an admission that the child is a CHINS, such adjudication automatically follows. Each circumstance when a parent admits the allegations set forth in the DCS petition is case specific. Each parent has the choice to admit the child is in need of services.

For example, a scenario could exist where a child is born positive for cocaine and the mother wants to admit the child is a CHINS, but the father, who has no problems of his own and does not live with the mother, wants to contest that his newborn child is a CHINS. While he might not contest the factual allegation the mother is admitting, he has the right to contest the allegation that his child needs the coercive intervention of the court. This particular element of the CHINS statutes, that the coercive intervention of the court is necessary to provide the child with certain services, is often contested in scenarios such as this. One parent may not believe the child needs care, treatment, or rehabilitation that they are not receiving and are unlikely to be provided or accepted without the coercive intervention of the court. In such a scenario, one parent should not be forced to forgo his or her due process based upon the other parent's admission. We contrast this with In re N.E., where the mother made an admission and the father still had a contested fact-finding hearing. Of course, we acknowledge that in many situations where DCS is involved, it is common for the children to have absent or even unknown parents. In those situations, it is critical that DCS properly serve all parties, by publication if necessary, and if the absent parent is not present, a default judgment could be entered. In such circumstances, it would not be necessary to give that absent parent a second bite at the apple of the fact-finding hearing.

9

## II. Due Process

Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). We have previously written that the process due in a termination of parental rights action turns on balancing three Mathews factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. In re C.G., 954 N.E.2d 910, 917 (2011). We hold these same factors apply to a due process analysis of a CHINS adjudication. In the present case we examine the Mathews factors in the context of Stepfather not being provided a fact-finding hearing, but instead a contested dispositional hearing.

Following the CHINS adjudication, the trial court conducts a dispositional hearing to consider the alternatives for the child's care, treatment, placement, or rehabilitation; the participation of the parent, guardian or custodian; and the financial responsibility for the services provided. Ind. Code § 31-34-19-1. Following the dispositional hearing, the juvenile court issues a dispositional order that sets forth the plan of care, treatment, or rehabilitation necessary to address the child's needs. Indiana Code section 31-34-19-10 provides,

    (a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:

        (1) The needs of the child for care, treatment, rehabilitation, or placement.

        (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.

        (3) Efforts made, if the child is a child in need of services, to:

            (A) prevent the child's removal from; or
            (B) reunite the child with;

        the child's parent, guardian, or custodian in accordance with federal law.

        (4) Family services that were offered and provided to:

            (A) a child in need of services; or
            (B) the child's parent, guardian, or custodian;
            in accordance with federal law.

        (5) The court's reasons for the disposition.

    (b) The juvenile court may incorporate a finding or conclusion from a pre-dispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

"Although the juvenile court has broad discretion in determining what programs and services in which a parent is required to participate, the requirements must relate to some behavior or circumstances that was revealed by the evidence." A.C. v. Marion County Dep't of Child Servs., 905 N.E.2d 456, 464 (Ind. Ct. App. 2009). Stepfather has constantly denied he needed sex-offender treatment. DCS did not prove at the fact finding Stepfather needed sex-offender treatment. Instead, the juvenile court interpreted In re N.E. to stand for the proposition that if one parent admits the child is a CHINS, the child is automatically a CHINS. In an attempt to provide Stepfather with due process, the juvenile court held a contested dispositional hearing. However, we hold under these facts, the contested dispositional hearing did not provide Stepfather due process because he was not given an opportunity to first contest the CHINS allegation.

Every CHINS proceeding "has the potential to interfere with the rights of parents in the upbringing of their children." In re N.E., 919 N.E.2d at 108. Due process at all stages of a CHINS case is so vital because "procedural irregularities, like an absence of clear findings of fact, in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights." In re J.Q., 836 N.E.2d 961, 967 (Ind. Ct. App. 2005). It is also a double-edged sword because not only must we ensure parental due process is upheld, but we also acknowledge that "a primary purpose and function of the [State] is to encourage and support the integrity and stability of an existing family environment and relationship." Jackson v. Madison County Dep't of Family & Children, 690 N.E.2d 792, 793 (Ind. Ct. App. 1998), trans. denied.

> [F]orcing unnecessary requirements upon parents whose children have been adjudicated as CHINS could set them up for failure with the end result being not only a failure to achieve the goal of reunification, but potentially, the termination of parental rights. See I.C. § 31-34-16-4 (stating that the juvenile court "shall advise the parent that failure to participate . . . can lead to the termination of the parent-child relationship"). These possible ramifications are inconsistent with the general requirement that "the [DCS] shall make reasonable efforts to preserve and reunify families," I.C. § 31-34-21-5.5, and unduly interfere with the parent-child relationship.

A.C., 905 N.E.2d at 464–65 (omission and second alteration in original).

11

In the present case, DCS wanted the Stepfather to participate and complete a sex-offender treatment program. That is the reason why DCS became involved with this family through an informal adjustment, and Stepfather's failure to complete such a program is why the CHINS petition was filed. The essence of this case was about the Stepfather's sex-offender counseling. The Stepfather and DCS requested a fact-finding hearing be held. By failing to provide the fact-finding hearing, Stepfather was deprived of due process at the CHINS adjudication stage. Without being able to challenge the evidence, Stepfather was sent through one barrier between him and DCS having the statutory authority to file a termination of parental rights petition. A contested dispositional hearing does not cure the lack of fact-finding hearing when the facts warrant such a hearing.

Applying the Mathews factors, the private interests affected by the CHINS fact-finding proceeding are substantial. The CHINS adjudication places a parent one possible step closer to the filing of a termination-of-parental-rights petition. The countervailing interest of not affording a parent the opportunity to contest the fact-finding hearing is a swift CHINS adjudication. However, our legislature has codified certain deadlines for fact-finding hearings to be held. Ind. Code § 31-34-11-1. We also point out that parents have less protections in a dispositional hearing than they have in a fact-finding hearing. Therefore, it would be advantageous for DCS to proceed to a contested dispositional hearing and bypass the fact-finding hearing. At a dispositional hearing, the juvenile court can admit the dispositional report of DCS even if it includes hearsay. In re C.B., 865 N.E.2d 1068, 1072 (Ind. Ct. App. 2007). "Any predispositional report may be admitted into evidence to the extent that the report contains evidence of probative value even if the report would otherwise be excluded." Ind. Code § 31-34-19-2(a). The contested fact-finding hearing held by the juvenile court in the present case did not afford Stepfather the same due process as he would have received in a contested fact-finding hearing. Because we have an "interlocking statutory scheme governing CHINS and involuntary termination of parental rights" we are compelled to "make sure that each procedure is conducted in accordance with the law." In re J.Q., 836 N.E.2d at 967.

In harmonizing Indiana code sections 31-34-10-8 and 31-34-11-1, we find that an abundance of caution should be used when interfering with the makeup of a family and entering a legal world that could end up in a separate proceeding with parental rights being terminated.

We hold that when one parent wishes to admit and another parent wishes to deny the child is in need of services, the trial court shall conduct a fact-finding hearing as to the entire matter.[10] We find this consistent with previous case law on CHINS and termination of parental rights issues and consistent with the ultimate social welfare policy of juvenile law. It is important to take extra time to provide due process for the parents to avoid jeopardizing any termination or adoption proceedings for lack of due process during the CHINS adjudication stage. Such an issue could lead to an even longer length of time for a child to gain ultimate permanency. By focusing on due process of the parents at the CHINS adjudication stage, all parties in the CHINS proceeding ultimately benefit, including the child. Although we do not believe many circumstances exist in which one parent is willing to admit and the other parent is not willing to admit based on the coercive-intervention prong of the CHINS statutes, due process nonetheless gives parents the right to a contested fact-finding hearing and DCS should otherwise be prepared to prove these cases by a preponderance of the evidence.

**Conclusion**

While a CHINS determination establishes the status of a child and a separate analysis as to each parent is not automatically required, as In re N.E. established, there are fact-sensitive situations where due process guarantees require separate fact findings for each parent. The due process of the parties and the status of the child are mutually exclusive. Whenever a trial court is confronted with one parent wishing to make an admission that the child is in need of services and the other parent wishing to deny the same, the trial court shall conduct a fact-finding hearing as to the entire matter. We remand to the trial court to provide Stepfather with a fact-finding hearing.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

---

[10] As mentioned previously, this would not prevent the trial court from going forward once publication has been entered on any absent or unknown parents.