Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**DONALD E.C. LEICHT**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**ALICIA C. CRIPE**
Indiana Department of Child Services
Howard County Local Office
Kokomo, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF M.W. AND K.W.-N., )
MINOR CHILDREN ALLEGED TO BE IN NEED )
OF SERVICES, )
    )
M.W., )
    )
    Appellant-Respondent, )
    )
    vs. )    No. 34A05-1201-JC-27
    )
INDIANA DEPARTMENT OF CHILD )
SERVICES, )
    )
    Appellee-Petitioner. )

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn Murray, Judge
Cause Nos. 34C01-1109-JC-339, 34C01-1109-JC-340

**July 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent M.W. ("Mother") appeals following the juvenile court's finding her children M.W. and K.W.-N. to be in need of services ("CHINS"). Upon appeal, Mother challenges the sufficiency of the evidence to establish that the requirements of Indiana Code section 31-34-1-1 (2011) have been met. We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother has two children: M.W., born September 19, 2006; and K.W.-N., born October 20, 2007.[1] On September 27, 2011, Indiana Department of Child Services ("DCS") family case manager Jennifer Boston arrived at Mother's home following reports by the Sheriff's Department that Mother was being transported to a local hospital under an Immediate Detention Order ("IDO"). Mother was emotional and disoriented at the time. Mother claimed to have taken "Ultram," which she indicated was similar to speed, and her home was in disarray with clothes covering the floor and dog feces in the bedroom. In Boston's view, the mess appeared to have accrued over a long period of time. Another adult, apparently Mother's father, was present in the home at the time, but he also appeared to be under the influence of some substance. Mother was adamant that he could not care for M.W. and K.W.-N., who were also present at the home. One of the children had ink markings all over her legs, causing Boston to question the effectiveness of Mother's supervision. M.W. and K.W.-N. were removed from the home. Mother later indicated that she was depressed and had other health concerns.

---

[1] Neither child's father is a party to this appeal.

On September 29, 2011, DCS filed petitions alleging M.W. and K.W.-N. to be CHINS. After Mother's release from the hospital, she discussed visitation with DCS. On one occasion, Mother was reluctant to establish visitation for fear that the children would become upset when it ended. On another occasion, Mother developed a staph infection, which also delayed the establishment of visitation. On approximately October 21, 2011, Mother went to her mother's home, where M.W. had been temporarily placed, to drop off clothes. Upon arriving, she demanded some of her mother's medication. When she was refused, Mother hit her mother, took M.W., and left. Mother was arrested and subsequently incarcerated. Mother claimed that her mother was also using drugs. The children were ultimately placed with K.W.-N.'s paternal grandmother.

Following her release from incarceration, Mother began visitation with her children. The state of her home was improved by October and maintained this improved status.

On November 27, 2011, following a fact-finding hearing at which Mother apparently did not appear, the juvenile court found both children to be CHINS. On December 2, 2011, Mother moved to set aside the CHINS adjudications on the grounds that she had been unaware of the hearing. The juvenile court granted the motion and held a second fact-finding hearing on December 19, 2011, at which Mother appeared and testified. The juvenile court again adjudicated the children to be CHINS and, following a dispositional hearing on February 6, 2012, ordered Mother to participate in various services and maintained the children's placement with K.W.-N.'s paternal grandmother. This appeal follows.

**DISCUSSION AND DECISION**

Upon appeal, Mother challenges the juvenile court's adjudication of M.W. and K.W.-N. as CHINS by claiming that the evidence does not establish that the children were seriously impaired or endangered. Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Upon review of a juvenile court's CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom. *Id*. We neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* Here, the juvenile court made findings of fact and conclusions thereon in adjudicating the children CHINS. When a juvenile court enters specific findings and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the juvenile court's judgment only if it is clearly erroneous. *Id.*

Indiana Code section 31-34-1-1 provides as follows:

A child is a child in need of services if before the child becomes eighteen (18) years of age:
 (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
  (2) the child needs care, treatment, or rehabilitation that:
   (A) the child is not receiving; and
   (B) is unlikely to be provided or accepted without the coercive intervention of the court.

4

In adjudicating M.W. and K.W.-N. to be CHINS, the juvenile court relied upon its findings that Mother had been taken to the hospital under an IDO; that she was disoriented and her home was in disarray; that she used drugs; and that due to her physical and mental health conditions, she needed help which she would not receive without assistance from DCS. Mother challenges the juvenile court's CHINS adjudications by arguing that, to the extent she was disoriented, it was due to her prescription medication; that the house was in disarray only briefly and as a result of this temporary disorientation; that the other adult in the house (her father) felt it unnecessary to intervene; and that therefore, there is no evidence that the children were seriously endangered or impaired under section 31-34-1-1.

Mother's claims are merely invitations to reweigh the evidence, which we decline. There was ample testimony to support the juvenile court's findings. Regarding Mother's disorientation, the juvenile court found that Mother was under the influence of drugs and had mental and physical health problems. To the extent Mother suggests that she used prescription drugs only and took them entirely as prescribed, she was nevertheless so disoriented that she was subject to an IDO. In addition, the conditions of her home demonstrated that her disorientation was detrimental to the lives of her children. Of course, there is ample evidence in the record showing that Mother's drug use was not prescription-only. Case manager Boston testified that Mother had indicated at the time of the IDO that she did not have a prescription for "Ultram," and Mother admitted having requested that the children's maternal grandmother give her some of the grandmother's own medication. The juvenile court was within its discretion to view Mother's drug use and disorientation—

5

whatever its cause—to be particularly harmful.

To the extent Mother claims that the house was only briefly in disarray, Boston, who had visited at the time, concluded that the mess was long-term. The juvenile court was entitled to accept Boston's conclusion on this point. As for the presence of another adult in the house, Mother herself did not trust this person's childcare skills, and he did not testify. Naturally, the juvenile court was not expected to view an alleged lack of interest on some other person's part as a reliable indicator that the circumstances were not dire. Given Mother's health and housing problems and the intervention it has taken thus far to address them, the juvenile court was within its discretion to conclude that Mother's problems would likely remain unchanged without ongoing court intervention and the provision of services. Accordingly, there was sufficient evidence to support the juvenile court's CHINS adjudications, and we affirm them with respect to both M.W. and K.W.-N.

The judgment of the juvenile court is affirmed.

VAIDIK, J., and CRONE, J., concur.