**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 07 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
DCS, Marion County Office
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| C.C., (Minor Child), a Child in Need of Services, | ) | |
| | ) | |
| M.W., Mother, | ) | |
| | ) | |
|     Appellant-Respondent, | ) | |
| | ) | |
|     vs. | ) | No. 49A04-1203-JC-127 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
|     Appellee-Petitioner, | ) | |
| | ) | |
| CHILD ADVOCATES, INC. | ) | |
| | ) | |
|     Co-Appellee-Guardian ad Litem. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Danielle Gaughan, Magistrate
Cause No. 49D09-1108-JC-33098

**November 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

M.W. (Mother) appeals following the adjudication of her seventeen-year old son, C.C., as a Child in Need of Services (CHINS). Mother agrees C.C. is a CHINS, but she challenges the statutory definition upon which, and thus the factual basis for which, he was declared a CHINS. Because she bases her legal arguments on facts other than those found by the trial court, and the record supports the trial court's findings and conclusions, we affirm.

## FACTS AND PROCEDURAL HISTORY

The trial court found:

> [C.C.]'s parents are not providing food, clothing, shelter, education, medical care or supervision for him. [Father]'s whereabouts are unknown. [Mother] will not allow [C.C.] to reside in her home due to her stated fear of him. [C.C.] has been at Lutherwood Treatment Facility since August of 2011 and neither the child's therapist nor the guardian ad litem [GAL] has observed behavior that would lead them to believe that the child is a danger to himself or others. Due to [C.C.]'s lack of a parent who is able or willing to provide care for him, the Court finds him to be a child in need of services.

(App. at 92.)

## DISCUSSION AND DECISION

Mother challenges the findings and the statutory basis on which C.C. was declared a CHINS.

> A CHINS proceeding is a civil action; thus, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. We neither reweigh the evidence nor judge the credibility of the witnesses. We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. We reverse only upon a showing that the decision of the trial court was clearly erroneous.

*In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (internal quotations and citations omitted).

Mother asserts the court should have declared C.C. a CHINS pursuant to Ind. Code §

2

31-34-1-6, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
> (1) the child substantially endangers the child's own health or the health of another individual; and
> (2) the child needs care, treatment, or rehabilitation that:
>> (A) the child is not receiving; and
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

The court explicitly declined to find C.C. a CHINS under this section: "The Court denies [Mother]'s request that the matter be considered under Indiana Code 31-34-1-6 and her oral motion to dismiss." (App. at 92.) Nor could the court's findings – reiterating neither C.C.'s therapist nor his GAL thought he was a danger to himself or others –have permitted the court to find C.C. was a CHINS under that statutory definition.

Instead, the court found, in accordance with the petition filed by the Department of Child Services (DCS), that C.C. was a CHINS pursuant to Ind. Code § 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
> (2) the child needs care, treatment, or rehabilitation that:
>> (A) the child is not receiving; and
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

To support her appellate argument that adjudicating C.C. to be a CHINS under that statute was erroneous, Mother asserts she "did not neglect her son by insisting that he remain in a

facility where he could receive treatment and [by] refusing to take him to her home where he was a danger to himself and the family." (Br. of Appellant at 3 (formatting removed)).

Initially, we note:

> Juvenile court judges are often faced with the challenge of balancing multiple factors and multiple voices in a CHINS case. Judges must uphold the due process rights of parents, apply the proper law, and take into account recommendations and input from the court appointed special advocate (CASA), DCS, parents, step-parents, guardians, grandparents, the child, and often several attorneys. By their very nature these cases do not fit neatly defined guidelines.
> Juvenile law is constructed upon the foundation of the State's *parens patriae* power, rather than the adversarial nature of *corpus juris*. Indeed, juvenile court jurisdiction is rooted in social welfare philosophy rather than in the *corpus juris*. The purpose of the CHINS adjudication is to protect the children, not punish parents. The process of the CHINS proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding. As previously mentioned, sometimes a child can be adjudicated a CHINS through no fault of the parent . . . .

*In re K.D.*, 962 N.E.2d at 1255 (internal quotations and citations omitted).

Although Mother's argument raises interesting policy questions about how our State might best serve families when a child's mental health impairs a parent's ability to care for that child, we need not reach those policy questions today because Mother's argument rests on erroneous factual assertions.[1]

First, Mother argues the trial court erred because she "did not neglect her son." (Br.

---

[1] We believe the legislature is the branch of government best equipped to consider the type of broad policy questions Mother raises. To that end, our legislature recently created an "interim study committee on underserved youth with mental health issues" to investigate:
> (1) whether prosecuting attorneys should be allowed to file a petition alleging that a child is a child in need of services under IC 31-34-1-6; and
> (2) the unmet mental health needs of children within the juvenile justice system, including children in need of services and delinquent children.
2012 Ind. P.L. 48-2012, Sec. 76 (effective July 1, 2012).

of Appellant at 3 (formatting removed)). We acknowledge this statute has been referred to as "the 'neglect' statute." *See In re K.D.*, 962 N.E.2d at 1255. However, the trial court did not find "neglect." It instead found there was no "parent who is able or willing to provide care." (App. at 92.) As DCS notes, Ind. Code § 31-34-1-1 was written in the disjunctive, so the court could find "Mother was unable, refused, *or* neglected" to care for her child. (Br. of Appellee at 14) (emphasis in original); *see also* I.C. 31-34-1-1 (stating child is a CHINS if endangered by the "inability, refusal, or neglect of the child's parent" to provide). The court did not need to find neglect to decide the child was a CHINS under that section. *See, e.g., In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999) (where legislature writes a statute in the disjunctive, with two possibilities, court needs find only one of the prongs), *trans. denied*.

Second, Mother asserts C.C. "was a danger to himself and the family." (Br. of Appellant at 3 (formatting removed)). The trial court found "neither the child's therapist nor the guardian ad litem has observed behavior that would lead them to believe that the child is a danger to himself or others." (App. at 92.) It obviously chose to believe the testimony of the therapist and GAL, rather than the testimony of Mother, and we are not permitted to assess the credibility of witnesses or reweigh the evidence. *See In re K.D.*, 962 N.E.2d at 1253.

Finally, the record leaves no doubt that Mother was unwilling to bring C.C. home from Lutherwood. Mother testified:

```
Q:    Did Lutherwood ask you to come get him?
A:    Yes.
Q:    Okay and did you go get him?
A:    No.
```
5

Q: Did you tell him that you would not come get him?
A: I did.
Q: So that's, that happened about when?
A: In August of 2011.
Q: August of 2011 and since that time, you've never picked him up, is that correct?
A: No.
Q: And you still decline to do so?
A: Yes.

(Tr. at 8-9.) We cannot find error in the finding Mother was unwilling to take C.C. home and the conclusion based thereon that he is a CHINS pursuant to Ind. Code § 31-34-1-1.[2]

    Affirmed.

KIRSCH, J., and NAJAM, J., concur.

---

[2] Mother argues we should reverse based on our holding in *In re V.H.*, 967 N.E.2d 1066 (Ind. Ct. App. 2012). *V.H.* is distinguishable. V.H. was a sixteen-year-old who had physically assaulted her mother on two occasions. Following the second assault, police placed V.H. in Lutherwood's Emergency Shelter. Although V.H.'s mother refused to take V.H. home from Lutherwood until V.H. received some counseling, V.H.'s mother took her home within a month of her entering Lutherwood and well before a CHINS factfinding hearing occurred. In contrast, Mother refused to take C.C. home even after he had received therapy, and the court heard testimony that C.C. was not a danger to himself or others. That C.C.'s mother appeared to have no intention of ever allowing C.C. to return to her home makes the case before us distinguishable from *V.H.*