## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2016, 7:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah K. Shepler
Sullivan, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of Jm.K., (Minor Child in Need of Services), | December 20, 2016 |
| and, | Court of Appeals Case No. 77A05-1605-JC-1020 |
| A.A. (Mother), | Appeal from the Sullivan Circuit Court |
| *Appellant-Respondent,* | The Honorable Robert E. Hunley, II, Judge |
| v. | The Honorable Robert E. Springer, Magistrate |
| | Trial Court Cause No. 77C01-1601-JC-4 |

The Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Barnes, Judge.**

## Case Summary

A.A. ("Mother") appeals the trial court's finding that her son, Jm.K., is a child in need of services ("CHINS"). We affirm.

## Issues

Mother raises one issue, which we restate as whether the evidence is sufficient to prove Jm.K. is a CHINS.

## Facts

Jx.K. was born in February 2014 to Mother and J.K. ("Father"). On June 28, 2014, the Sullivan County Department of Child Services ("DCS") received a report that Jx.K. had been brought to the hospital with injuries. Father stated that Jx.K. had stopped breathing after he left Jx.K. on the bed and went to get a bottle. According to Father, he performed CPR on Jx.K. and called 911. Jx.K. had bruises on his shoulders, arms, face, and foot. Mother stated that she was not at home when the injuries occurred. X-rays revealed that Jx.K. had

"subacute or old fractures of the medial shaft of the right clavicle, lateral shaft of the left clavicle, mid shaft of the right tibia, and the base of the left first metatarsal." Appellee's App. Vol. II p. 18. Neither Mother nor Father was able to explain the fractures.

[4] DCS took Jx.K. into protective custody, and the trial court found him to be a CHINS. He was initially placed with his paternal grandmother. However, in April 2015, a DCS worker observed a bruise on Jx.K.'s arm, and after Jx.K. was placed in foster care, Father admitted to biting Jx.K. after he bit Father. Father was arrested and charged with battery.

[5] Jm.K. was then born to Mother and Father in November 2015. DCS immediately removed Jm.K. from Mother and Father's care and filed a petition alleging that Jm.K. was also a CHINS. After an evidentiary hearing, the trial court entered an order finding that Jm.K. was a CHINS. The trial court took judicial notice of the evidence and findings in Jx.K.'s CHINS case and found:

> The child, [Jx.K.,] was severely injured with multiple injuries, including broken bones, spiral fractures and bruises. The injuries have no other explanation other than that they were caused by the act or omission of one or both of the parents. The child [Jx.K.] has not been returned to his parents' care since the initial removal. The parents have not taken responsibility for any particular act or omission on their part that caused [Jx.K.'s] injuries. Given said denial, they have not addressed the causes of [Jx.K.'s] injuries. As a result, insufficient progress has been made that would allow a child to safely reside in their care. Therefore, [Jm.K.'s] physical or mental condition is seriously endangered by the parents' neglect, inability or refusal to provide a safe home. The coercive intervention of the Court is necessary

due to the parents' refusal to accept responsibility and address the causes of [Jx.K.'s] injuries.

Appellant's App. Vol. II p. 4. Mother now appeals.[1]

## Analysis

[6] Mother challenges the trial court's finding that Jm.K. is a CHINS. "A CHINS proceeding is a civil action; thus, 'the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code.'" *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (quoting *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*

[7] "There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS." *Id.* DCS must first prove the child is under the age of eighteen. *Id.* DCS must then prove that at least one of eleven different statutory circumstances exists that would make the child a CHINS. *Id.* Finally, "in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court." *Id.*

---

[1] Father does not participate in this appeal.

[8]     Here, DCS alleged that Jm.K. was a CHINS based on Indiana Code Section 31-34-1-1 and Indiana Code Section 31-34-1-2.[2]  The trial court found Jm.K. to be a CHINS based on Indiana Code Section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1)    the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

---

[2] Indiana Code Section 31-34-1-2(a) provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>     (A) the child is not receiving; and
>
>     (B) is unlikely to be provided or accepted without the coercive intervention of the court.

> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[9] Mother appears to challenge only the trial court's finding that Jm.K.'s "physical or mental condition is seriously endangered by the parents' neglect, inability or refusal to provide a safe home." Appellant's App. Vol. II p. 4. According to Mother, the trial court disregarded progress made in Jx.K.'s CHINS case because of their failure to provide an explanation for Jx.K.'s injuries. Mother argues that the CHINS finding "was based solely on conditions that existed at the time of Jx.K.'s injuries, but no longer existed at the time of Jm.K.'s fact finding hearing." Appellant's Br. p. 10.

[10] In support of her argument, Mother relies on *In re B.W.*, 17 N.E.3d 299 (Ind. Ct. App. 2014). In *B.W.*, the children were removed from their mother and her fiance after one of the children had a fractured arm and x-rays revealed several other fractures in various stages of healing. The mother and her now-husband stipulated that there was no adequate explanation for the injuries and that the children were CHINS. The husband was later dismissed from the proceedings after he filed a petition for dissolution of marriage. The mother participated in home-based services, therapy, and visitations, but DCS and the trial court remained concerned about the mother's lack of honesty regarding the child's

injuries. After a permanency hearing, the trial court appointed guardians for the children, and the mother appealed that order.

[11] The issue on appeal was whether the trial court abused its discretion by appointing guardians over the children. We concluded that the trial court's finding that a guardianship was in the children's best interests was clearly erroneous. We held that "DCS presented no evidence to demonstrate any conditions existing at the time of the final permanency hearing to justify the permanent removal of the children." *B.W.*, 17 N.E.3d 310. We concluded: "In sum, there is simply no clear and convincing evidence that the children would be in any danger if they are reunited with Mother. Mother's failure to explain the cause of B.W.'s injuries is not evidence of a present inability to provide a safe home for the children." *Id.* Consequently, we held that the trial court abused its discretion by ordering the guardianships.

[12] We find this case to be distinguishable from *B.W. B.W.* addressed a trial court's granting of a guardianship, which was essentially the "permanent removal of the children." *Id.* at 309. Here, we are reviewing a trial court's decision that Jm.K. is a CHINS. As the State points out that Mother does not challenge any of the trial court's findings of fact, including the trial court's finding that the "injuries have no other explanation other than that they were caused by the act or omission of one or both of the parents." Appellant's App. Vol. II p. 4. DCS presented evidence that, although they have participated in services in the CHINS action related to Jx.K., Mother and Father have not addressed the cause of Jx.K.'s injuries and, as a result, have not made sufficient progress to

have Jx.K. returned to their care.  Under these circumstances, we conclude that the trial court's finding that Jm.K. is also a CHINS is not clearly erroneous.

## Conclusion

[13]    The trial court properly concluded that Jm.K. is a CHINS.  We affirm.

[14]    Affirmed.

Bailey, J., and Riley, J., concur.