

**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT

Steven Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES:

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
CHILD ADVOCATES, INC.:

Dede Kristine Connor

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of J.J-B., (Minor Child), Child in Need of Services

and

J.B. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner,*

and

Child Advocates, Inc.,

*Appellee-Guardian ad Litem.*

January 30, 2020

Court of Appeals Case No. 19A-JC-1989

Appeal from the Marion Superior Court

The Honorable Peter Haughan, Judge Pro Tempore and

The Honorable Diana Burleson, Magistrate

Trial Court Cause No. 49D15-1710-JC-3340

**Tavitas, Judge.**

# Case Summary

[1] J.B. ("Father") appeals from the trial court's adjudication of his minor child, J.J.-B., formerly known as M.B.[1] (the "Child"), as a child in need of services ("CHINS"). We affirm.

---

[1] The Child is also identified in the record as "M.J." During the pendency of the CHINS action, the Child's name was changed from "M.J." to "J.J-B," pursuant to a paternity affidavit.

# Issue

[2] J.B. raised a single issue on appeal, which we restate as whether the trial court denied Father procedural due process when the trial court, in proceedings related to the Child's mother, adjudicated the Child as a CHINS one year before Father's fact-finding hearing.

# Facts

[3] The Child (born in July 2016) is the biological child of Father and K.J. ("Mother"); however, for much of the pendency of the matter, the Child's paternity was unknown. On October 6, 2017, the Marion County Office of the Department of Child Services ("DCS") removed the Child from Mother's care based on Mother's instability and mental health issues. At the time, a DCS matter was pending regarding one of Mother's other children.

[4] Also, on October 6, 2017, DCS filed a verified petition in which DCS alleged that the Child was a CHINS. At the time, the identity of the Child's father was unknown to DCS, and the CHINS petition so stated. For much of the pendency of the underlying CHINS action, the paternity of the Child was unknown. Although Mother and Father maintained an "off and on"

relationship throughout the pendency of the CHINS matter, Mother refused to identify Father to DCS.[2] Tr. Vol. II p. 33.

[5] In January 2018, DCS moved to amend the CHINS petition to reflect that Father was an alleged father of the Child, which the trial court granted. On January 20, February 13, and May 15, 2018, the trial court conducted a hearing, as to Mother only, on the amended CHINS petition. On June 12, 2018, the trial court adjudicated the Child as a CHINS based upon Mother's untreated mental health conditions, violent behavior, and pending DCS matter regarding another child.

[6] Mother identified Father as the Child's biological father in December 2018. Mother and Father executed a paternity affidavit and changed the Child's name. On January 26, 2019, DCS filed a second amended CHINS petition, which again identified Father as the alleged father of the Child and included additional allegations regarding Mother.

[7] On March 12, 2019, Father, by his first attorney, admitted that the Child was a CHINS and waived a fact-finding hearing. On April 23, 2019, Father, by new counsel, moved to withdraw the waiver of fact-finding, which was granted.

---

[2] Mother told family case manager Alicia Walker that, while Mother was pregnant with the Child, Father was present in Mother's life," but "after [the Child] was born, [Father] was in and out of the state fleeing to Georgia avoiding criminal charges." Tr. Vol. II p. 33.

[8] On May 10, 2019, DCS filed a third amended petition alleging the Child to be a CHINS. Therein, DCS alleged, in part, that:

> Family services were not provided before the removal of the child, for the following reasons: The DCS was unable to provide efforts to prevent removal as a result of the emergency nature of the situation, in that DCS had concerns for [Mother's] mental stability and the safety of the child in her care, [ ] Father['s] [identity] was previously unknown but at the time [Father] was identified[,] [Father] was incarcerated.

Appellant's App. Vol. II p. 42. Also, DCS alleged: (1) Father "has not successfully demonstrated an ability or willingness to appropriately parent the child, and he is either unwilling or unable to ensure the safety and well being of the child in the care of [Mother]"; and (2) "Father has been unavailable to parent the child due to numerous periods of incarceration" and "faces new criminal charges that have the possibility of additional incarceration time." *Id*.

[9] On May 14, 2019, the trial court conducted a fact-finding hearing as to Father. Father did not appear. At the outset of the hearing, defense counsel moved to dismiss DCS's CHINS petition on the ground that the trial court failed to complete a fact-finding hearing within 120 days of the filing of the CHINS petition.[3] Tr. Vol. II p. 4. Defense counsel also argued that counsel was not

---

[3] *See* Ind. Code § 31-34-11-1

.

prepared for the fact-finding hearing following DCS's recently filed amendment of the CHINS petition on May 10 and counsel's inability to contact Father.

[10] The trial court denied Father's motion to dismiss and stated:

> You know, this – the delay in this case is not just from a third amended petition or a second amended petition. The delay in this case has been that we haven't known who [Father] is. Now that we do, we're doing what we can to get him tried. I allowed you [defense counsel] to withdraw[ ] the waiver that he did in order to give him a fair Trial. Let's give him a fair Trial. . . . I'm not going to dismiss it on a hundred twenty, because in January we found out who he was. We've been trying to get this done. They show up in here with a paternity affidavit that nobody knew about, I mean, no. We're going to Trial.

*Id*. at 7-8. Next, defense counsel argued that, given DCS's belated amendment of the CHINS petition, the trial court would deny Father due process if it required Father to proceed with trial as scheduled. *See id*. at 10 (". . .[T]his case should not be forced to go forward today without [Father] having an opportunity to have an adequate amount of time to prepare for Trial . . . ."). The trial court continued the fact-finding hearing to July 23, 2019.

[11] Approximately a week before the rescheduled fact-finding hearing was to occur, Mother gave birth to another child. Family case manager Walker testified that Father was a likely father of the newborn and that Mother told DCS that Mother and Father "were engaged[.]" *Id*. at 33.

[12] The trial court conducted the fact-finding hearing as to Father on July 23, 2019. Father did not appear. Counsel for Father again requested a continuance and

cited counsel's lack of contact with Father. The trial court denied the motion for a continuance. The fact-finding hearing proceeded as scheduled, and the trial court heard "statements and evidence[.]" Appellant's App. Vol. II p. 28.

[13] DCS's witnesses testified that: (1) Father failed to properly engage in supervised visitation; (2) Father declined to participate in therapy that was "mandated in order for him to start seeing [the Child]"; (3) Father exhibited signs of undiagnosed mental health conditions and "concerning" behavior, but refused to participate in a mental health assessment; (4) Father had "pending charges for violent crimes[;] [s]o it is unknown if he will be available to parent the child"; (5) Father failed to demonstrate that he had stable housing and employment; and (6) Father displayed a lack of interest in the Child. Tr. Vol. II pp. 26, 37, 38.

[14] On July 23, 2019, the trial court entered its dispositional order as to Father in which it found: "it is in the best interest of the [C]hild to be continued removed [sic] from the home environment"; and "remaining in the home would be contrary to the welfare of the child" because "the allegations [were] admitted or found to be true." *Id.* at 27, 28. Father now appeals.

## Analysis

[15] Father argues that the trial court denied him procedural due process. The Fourteenth Amendment to the United States Constitution protects the "fundamental right to family integrity" against unwarranted government intrusion. *In re S.A.*, 15 N.E.3d 602, 607-08 (Ind. Ct. App. 2014), *clarified on*

*reh'g*, 27 N.E.3d 287 (Ind. Ct. App. 2015), *trans. denied* (citations and quotations omitted). This protection encompasses parents' fundamental right to "direct[ ] the care, custody, and control of their children." *Id*. However, a parent's rights are not absolute. *Id*. Acting under its parens patriae power, the State may interfere with parental autonomy when it is "necessary to protect the health and safety of children." *Id*. The purpose of the CHINS statute is "to help families in crisis—to protect children, not punish parents." *Id*.

[16] Due process requires that a person be afforded the opportunity to be heard at a meaningful time and in a meaningful manner. *In re K.D.,* 962 N.E.2d 1249, 1257 (Ind. 2012). A parent's right to raise one's children is protected by due process. *McBride v. Monroe Cnty. Office of Family & Children,* 798 N.E.2d 185, 194 (Ind.Ct.App.2003). Due process gives parents the right to a contested fact-finding hearing in CHINS proceedings. *K.D.,* 962 N.E.2d at 1259.

[17] The crux of Father's claim is that he was denied due process as a result of the trial court's separate CHINS adjudication regarding Father, after the trial court already adjudicated the Child as a CHINS as to Mother. Father relies on *S.A.* in support of his claim. In *S.A.*, three months after trial court adjudicated the child as a CHINS based on the mother's admission, the trial conducted a fact-finding hearing regarding allegations pertaining to the father. This Court found error from the fact that the trial court "had already determined the Child's CHINS status based solely on [the] [m]other's admission[,]" "*notwithstanding the fact that [the father] was involved in the case and had denied the allegations in the CHINS petition*." *S.A.*, 15 N.E.3d at 609 (emphasis added).

In finding that the trial court "deprived [the] [f]ather of a meaningful opportunity to be heard" when it "adjudicat[ed] the Child as a CHINS prior to Father's fact-finding[,]" the *S.A.* panel reasoned that:

> . . . "[A] separate analysis as to each parent is not required" in making a CHINS determination because a CHINS adjudication reflects the status of a child without establishing the culpability of a particular parent. . . . .

> \* \* \* \* \*

> . . .[A] separate analysis "is sometimes necessary" if allegations have been made against both parents, and where one parent wishes to admit that the child is a CHINS while the other denies it. A CHINS adjudication requires that DCS prove each of the elements in the CHINS statute, and "each parent has the right to challenge those elements." Thus, while [one parent] might not be able to dispute the factual allegations admitted by [another parent], "he [or she] has the right to contest the allegation that [the] [C]hild needs the coercive intervention of the court." In these situations, due process requires that the trial court "conduct a fact-finding hearing as to the entire matter."

*Id.* at 608. On rehearing, we clarified our prior opinion and stated that, "when the [CHINS] adjudication can involve both parents at the same time, it should involve both parents at the same time so there is one adjudication as to all facts pertaining to the entire matter"; however, we added:

> . . . [i]f multiple hearings are unavoidable, then the trial court should, if at all possible, refrain from adjudicating a child a CHINS until evidence has been heard from both parents. *And if an adjudication is unavoidable before evidence has been heard from the*

> *second parent, then the trial court must give meaningful consideration to the evidence provided by the second parent in determining whether the child remains a CHINS.*

*In re S.A.*, 27 N.E.3d 287, 292 (Ind. Ct. App. 2015) (emphasis added). The facts before us are distinguishable from those in *S.A.*

[19] Here, Father and Mother created the need for multiple hearings of which Father now complains. The record reveals that: (1) Mother deliberately concealed Father's identity from DCS and the trial court; (2) Father—who was involved in Mother's life during her pregnancy with the Child, continued to be in an "off and on" relationship with Mother throughout the pendency of the CHINS action, and was engaged to Mother by the time of the fact-finding hearing—was notably absent for the initial fifteen months of the CHINS matter involving Mother; and (3) Father actively hid his identity from DCS, purportedly in an effort to evade criminal charges. For these reasons, "adjudication [wa]s unavoidable before evidence ha[d] been heard from [Father,]" and—in Father's absence—the trial court adjudicated the Child as a CHINS relative to the allegations against Mother. *See id.*

[20] The record further reveals that, when DCS learned Father's identity, DCS amended the CHINS petition to include Father and allegations against Father, and the trial court conducted a separate fact-finding hearing regarding Father. Father does not assert, nor does the record indicate, that the trial court failed to meaningfully consider the evidence provided by Father in determining whether

the Child should remain a CHINS.  *See id*.  Based on the foregoing, Father has not demonstrated that the trial court denied him procedural due process.

## Conclusion

Father was not denied procedural due process.  We affirm.

Affirmed.

Najam, J., and Vaidik, J., concur.