**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 24 2014, 10:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**DERRICK A. MASON**
**PHYLLIS J. EMERIC**
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Office of Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF:                                  )
N.W. (minor child), A CHILD IN NEED               )
OF SERVICES;                                       )
                                                   )
A.B. (MOTHER) AND                                  )
No.W. (FATHER),                                    )
                                                   )
    Appellants-Respondents,                       )
                                                   )
      vs.                                   )     No.  53A04-1307-JC-335
                                                   )
THE INDIANA DEPARTMENT OF                          )
CHILD SERVICES,                                    )
                                                   )
    Appellee-Petitioner.                          )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Stephen Galvin, Judge
Cause No. 53C07-1302-JC-62

**January 24, 2014**

**PYLE, Judge**

<u>STATEMENT OF THE CASE</u>

A.B. ("Mother") and No.W. ("Father") appeal the trial court's determination that their daughter, N.W. is a child in need of services ("CHINS").

We affirm.

<u>ISSUE</u>

Whether sufficient evidence supports the trial court's finding that N.W. is a CHINS.

<u>FACTS</u>

N.W. was born on July 12, 2012, and lived with Mother and Father in Bloomington. On or about January 29, 2013, the Department of Child Services ("DCS") received a report of neglect concerning N.W, who was six months old at the time. The next day, Stephanie Clephane ("Clephane"), a family case manager with DCS, went to the apartment of Kita Jones ("Jones") where N.W. was located. Jasmine French ("French") was also in the apartment. Clephane found N.W. sitting in her car seat. Clephane picked N.W. up and noticed that a portion of her head "was very straight flat." (Tr. 4). Clephane tried to give N.W. a bottle, but N.W. did not appear to eat from the bottle well. Clephane observed one can of formula that was about three quarters full. Clephane found no other appropriate food for N.W. in the apartment. N.W. was wearing an outfit that, according to Clephane, appeared to be too small. Clephane also searched the house for additional clothes that looked appropriate for N.W.; she found none.

2

Clephane played with N.W. and noticed that she would not attempt to roll over when placed on her back or stomach. Finally, Clephane observed no permanent or portable crib where N.W. could sleep. Mother was not at the apartment, and Clephane was not able to locate her that day. N.W. was taken into DCS custody.

In an attempt to locate Mother, Clephane went to the Shalom Community Center in Bloomington. Mother was not there, but Clephane left a message for Mother to contact her as soon as possible regarding N.W. Mother contacted a child abuse hotline on February 3, 2013, asking about the location of N.W. Clephane talked to Mother on February 4, 2013 and picked up Mother and Father at the Southern Winds Apartments. At that time, Mother told Clephane that she and Father were evicted from their residence and were staying with different friends. Mother also told Clephane that she called French and asked her to take N.W. until Mother got her tax check and could get a hotel room.

On February 4, 2013, DCS filed a verified petition alleging that N.W. was a CHINS. The petition alleged, among other things, that Mother was homeless and left N.W. with French, who subsequently left N.W. with Jones after being unable to care for her. The trial court found that N.W. should stay in DCS custody and scheduled a fact-finding hearing for March 28, 2013. The hearing began on the 28th and was continued to April 2, 2013.

At the fact-finding hearing, Clephane testified about her observations at Jones's apartment and her conversation with Mother. Father testified that he was working at Burger King and that he and Mother were now living with Amber Barker ("Barker"). Father further testified that he and Mother had left food, clothes, and a portable crib with

3

French for N.W. However, Clephane testified that she examined the apartments of both Jones and French and found no portable crib or extra food for N.W. The trial court took the matter under advisement and later issued an order on May 16, 2013, finding that N.W. was a CHINS. The trial court held a dispositional hearing on June 10, 2013 and issued an order on June 11, 2013. Additional facts will be added as needed.

## DECISION

Mother and Father claim that insufficient evidence supported the trial court's finding that N.W. was a CHINS. Specifically, they claim the evidence presented did not establish that the reasons for N.W.'s removal had not been remedied.

A CHINS proceeding is a civil action, and "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *In re. K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id*. We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id*.

Here, DCS alleged that N.W. was a CHINS under Indiana Code § 31-34-1-1, which reads as follows:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> > (1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the

4

child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) The child needs care, treatment, or rehabilitation that;

(A) The child is not receiving; and

(B) Is unlikely to be provided or accepted without the coercive intervention of the Court.

Ind. Code § 31-34-1-1.

The evidence most favorable to the trial court's ruling is that Mother and Father were homeless and asked French to take N.W. until Mother received her tax refund check. Although Father claimed that he and Mother sent food, clothes, and a portable crib with N.W., Clephane did not find any of these items when she inspected Jones's and French's apartments. Father further testified that after leaving N.W. with French, he and Mother had very little contact with French. In fact, Father claims that he was notified via Facebook that DCS had custody of N.W. Mother had to call a child abuse hotline to inquire about N.W.'s location. At the time of the fact-finding hearing, Father testified that he and Mother were living with Barker and paying twenty-five dollars ($25.00) per month towards expenses for the apartment. However, at the dispositional hearing, DCS presented testimony that Barker had since been evicted. Mother and Father claim that this evidence is not sufficient and rely on *M.K. v. Indiana Dep't. of Child Services*, 964 N.E.2d 240 (Ind. Ct. App. 2012) to support their argument. Mother and Father's reliance on *M.K.* is misplaced.

In *M.K.*, we reversed the ruling of the trial court for lack of sufficient evidence because both parents were employed and the mother and children's temporary

displacement to Fort Wayne was through unforeseen and unfortunate circumstances (a fire in a neighboring apartment, and the mother being assaulted by an ex-boyfriend after briefly staying with him). At the time of the fire, the father was away from the family tending to his ill mother in Texas. The mother and her children were taken by a police officer to a shelter, though the mother requested to go to a motel. The mother took the children to a motel two days later as originally planned. The mother had access to money and a plan to find relatives in Fort Wayne. The mother had packed ample supplies for her children, and a DCS caseworker testified that the children appeared to be well fed and clothed. Thus, we found that the children were not endangered by any neglect, and the parents were willing and able to provide stable housing, food, clothing, care, or supervision for their children.

Here, there are simply no unfortunate circumstances in the record similar to those found in *M.K.* Rather, there are indications that Mother and Father's problems may be of their own making (Father's arrest weeks before the fact-finding hearing and a DCS worker smelling what she thought was marijuana in the room of Barker's apartment where Mother and Father were staying). Nevertheless, a CHINS proceeding focuses on the condition of the child and not culpability on the part of the parents. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Six-month-old N.W. had a flat head, would not roll over from her stomach or back, and did not eat well from a bottle. Neither French nor Jones had appropriate food, clothes, or a crib of any kind for N.W. Mother and Father's homelessness combined with N.W.'s condition when DCS took custody of her are

sufficient evidence to support the trial court's adjudication that N.W. is a CHINS.  The trial court's order is not clearly erroneous.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.