# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 04 2016, 7:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jill M. Acklin
McGrath, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:
U.E., T.C. and K.C., Children in Need of Services,

   and

R.C. (Mother),

*Appellant-Respondent,*

     v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

May 4, 2016

Court of Appeals Case No.
49A04-1510-JC-1566

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Danielle P. Gaughan, Magistrate

Trial Court Cause Nos.
49D09-1504-JC-1454
49D09-1504-JC-1455
49D09-1508-JC-2374

**Baker, Judge.**

R.C. (Mother) appeals the juvenile court's order finding her children to be Children in Need of Services (CHINS). Mother argues that the evidence is insufficient to support the CHINS adjudication. Finding the evidence sufficient, we affirm.

## Facts

Mother has three children: T.C., born in December 2009; K.C., born in October 2012; and U.E., born in August 2015.[1] On April 30, 2015, the Department of Child Services (DCS) filed a petition alleging that T.C. and K.C. were CHINS because T.C. had visible injuries to her neck, lower back, and both arms. T.C. stated that Mother had inflicted the injuries. At a hearing held the same day, the juvenile court removed the two children from Mother's care and custody; they have remained out of her care since that time.

The CHINS case remained open and unresolved when U.E. was born on August 3, 2015. DCS filed a petition alleging U.E. to be a CHINS on August 6, 2015. The petition was based on allegations that Mother had tested positive for marijuana during the pregnancy, had not been successfully participating in services in the ongoing CHINS case, and had failed to address mental health issues. The juvenile court removed U.E. from Mother's care and custody; she has remained out of Mother's care since that time.

---

[1] The children's fathers are not parties to this appeal.

[4]     The juvenile court held a factfinding hearing on August 24, 2015. At that hearing, DCS offered the following evidence in support of its CHINS allegations:

- T.C. reported that the injuries to her arms, neck, and back occurred when Mother had "whooped" her. Tr. p. 32.
- T.C. was evaluated by a child abuse specialist at Riley Hospital, who recommended that T.C. be seen and evaluated by her primary care provider. Mother never scheduled that appointment.
- After U.E. was born and removed from Mother's care and custody, Mother stated she did not want to see the child. At the time of the CHINS factfinding hearing, Mother had not visited with U.E. on a single occasion.
- At first, Mother was willing to participate with services. She began to work with a home-based therapist, who testified that during their three meetings, Mother was "very guarded" and "somewhat paranoid." Tr. p. 80, 83. The therapist recommended that Mother complete a full psychological evaluation. Mother did not complete the evaluation and stopped meeting with the home-based therapist.
- Mother reported that she has been diagnosed with depression in the past.
- Between July 29 and August 23, Mother chose not to visit with T.C. or K.C. even though she was permitted to have supervised parenting time with them.
- Mother told the Family Case Manager that she would not participate with any services unless her children were returned to her care and custody.
- On August 6, 2015, at an initial hearing in court, Mother became upset with D.E., U.E.'s father. She physically pushed him and threw a pen at him.
- Approximately one week before the factfinding hearing, Mother again became angry with D.E. while in the juvenile court building. While D.E. was holding infant U.E. in his arms, Mother punched and/or pushed him and raised an umbrella at him. Mother threatened, "bitch, I'ma [sic] beat your ass[.]" Tr. p. 98-99.

- On another occasion, Mother went to D.E.'s home, where U.E. was living. D.E. met her outside the building and tried to escort her away, explaining that he did not want her there because he did not want to risk losing custody of U.E. Mother pulled away from him, entered his apartment, and locked the door. D.E. called law enforcement, who ordered Mother to leave.

Based on the above evidence, the juvenile court found all three children to be CHINS at the close of the hearing, and entered a written order to the same effect on August 27, 2015. At the September 15, 2015, dispositional hearing, the juvenile court ordered Mother to participate in home-based case management and therapy, parenting and substance abuse assessments, a mental health evaluation, and random drug screens. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

Mother's sole argument on appeal is that the evidence is insufficient to support the juvenile court's CHINS finding. Our Supreme Court has explained the nature of a CHINS proceeding and appellate review of a CHINS finding as follows:

> A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.R.,* 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only

upon a showing that the decision of the trial court was clearly erroneous. *Id.*

There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.,* 919 N.E.2d at 105.

*In re K.D.,* 962 N.E.2d 1249, 1253–54 (Ind. 2012) (footnote omitted).

Here, DCS alleged that the children were CHINS pursuant to Indiana Code section 31–34–1–1, which provides as follows:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1)     the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2)     the child needs care, treatment, or rehabilitation that:

(A)     the child is not receiving; and

> (B)     is unlikely to be provided or accepted without the coercive intervention of the court.

Our Supreme Court has interpreted this provision to require "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.,* 2 N.E.3d 1283, 1287 (Ind. 2014).

## II.  Sufficiency

[7]     Mother's argument focuses solely on her mental health.  She contends that the evidence regarding her mental health is speculative and stems from the testimony of individuals who do not specialize in treating mental health issues. We disagree.  Mother herself reported that she has been diagnosed with depression in the past.  Tr. p. 96.  Her home-based therapist, who had sufficient training to identify whether an individual might benefit from a psychological evaluation, testified that Mother's "paranoid" and "guarded" behavior indicated that a psychological evaluation would be beneficial.  Tr. p. 80, 83. This evidence supports the juvenile court's conclusion that the children's physical or mental condition is seriously impaired or endangered because, in part: "Mother herself has acknowledged that she has depression and service providers have concerns regarding her mental health."  Appellant's App. p. 160.

[8]     Even had we found the evidence regarding Mother's mental health to be lacking, however, we would still have affirmed the CHINS finding.  The record

reveals the following evidence regarding Mother's behavior: she caused visible injuries to T.C.'s neck, back, and arms; she did not want to see U.E. and had not yet visited with her newborn at the time of the CHINS factfinding hearing; she had not visited with her other two children in the month leading up to the hearing; she engaged in multiple acts of domestic violence with D.E., and on one of those occasions, she physically attacked D.E. *while he was holding U.E. in his arms*. This evidence readily supports the juvenile court's conclusion that the children's physical or mental condition is seriously impaired or seriously endangered as a result of Mother's actions. Furthermore, this evidence supports a conclusion that the children needed care that they were not receiving when in Mother's custody.

[9] Mother also stated that she refused to participate in services unless her children were returned to her care and custody. This evidence supports the juvenile court's conclusion that the coercive intervention of the court is necessary to ensure that the children receive the care that they need. In sum, we find that the evidence readily supports the juvenile court's conclusion that these children are CHINS.

[10] The judgment of the juvenile court is affirmed.

May, J., and Brown, J., concur.