# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 15 2016, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Justin R. Wall
Wall Legal Services
Wabash, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of Al.G., As.G., and J.D., Jr. (Minor Children), Children in Need of Services,

and

C.G. (Mother) and J.D. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

July 15, 2016

Court of Appeals Case No. 85A04-1602-JC-378

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen, III, Judge

Trial Court Cause Nos. 85C01-1511-JC-70, -71, and -72

**Crone, Judge.**

# Case Summary

C.G. ("Mother) and J.D. ("Father") appeal the trial court's adjudication of minor children Al.G., As.G., and J.D., Jr., as children in need of services ("CHINS"). The sole restated issue for our review is whether sufficient evidence supports the trial court's determination that the children are CHINS pursuant to Indiana Code Sections 31-34-1-1 and -2. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

In November 2015, the police served a search warrant where Mother and Father were residing with Al.G., As.G., and J.D., Jr. Al.G. was born in October 1999. As.G. was born in March 2009. J.D., Jr., was born in August 2015. The parents of Al.G. and As.G. are Mother and S.G. The parents of J.D., Jr., are Mother and Father. The police discovered a methamphetamine lab, supplies used to manufacture methamphetamine, and a finished batch of methamphetamine. The police discovered cups containing chemicals used to manufacture methamphetamine that were labeled to deter the children from drinking from the wrong cups. While the police were there, As.G. almost took a sip from one of the cups that contained the chemicals. Also, an odor of ammonia that is associated with the manufacturing of the methamphetamine was detected by the police in the bathroom of the home. The police contacted the Wabash County Department of Child Services ("DCS") to report that they had found a methamphetamine lab in the presence of all three children.

[3]     Mother and Father submitted to oral drug screens, which came back positive for amphetamine/methamphetamine. DCS removed all of the children from the residence and took them to the hospital to undergo medical exams. All of the children's health screenings came back fine except for A1.G., who tested positive for marijuana. DCS filed a CHINS petition for each child. DCS also requested that all of the children be placed in foster care.

[4]     In January 2016, a factfinding hearing was held. Based upon the evidence presented at the hearing, the trial court issued an order that reads in relevant part as follows:[1]

> During a search of the residence numerous syringes, methamphetamine residue, methamphetamine precursors and devices used to manufacture methamphetamine were located throughout the house but primarily in a bathroom and on a back porch. The items were within easy reach of the children.
>
> Both Mother and Father submitted to oral drug screens which came back positive for amphetamine/methamphetamine. Both Mother and Father denied knowing anything about the existence of a meth lab at the residence. Mother presented unbelievable testimony about how she may have tested positive for amphetamine/methamphetamine. Beyond providing her name, most of her testimony was not truthful. It appears she is suggesting that the DCS family case manager that gave her the oral swab contaminated the sample during the collection process. That flies in the face of the evidence before the Court.

---

[1] The order refers to the parents by name; we use Mother and Father.

C[l]early Father and Mother knew there was an active meth lab at the residence where they were staying with the children. According to Matt Shrider of the Wabash County Drug Task Force, the evidence reflected that the meth, or a portion thereof, had recently been manufactured due to the wetness of a white substance located in the residence. Both Father and Mother had amphetamine/methamphetamine in their system while the children were in their care. Mother testified she only stayed at that residence a few days as she was between homes, however, she and the children were residing there, albeit briefly. Further, Father and Mother knowingly exposed the children to the serious dangers of an active or recently active meth lab. Officer Shrider testified to the many dangers and hazards to the occupants of a residence with an active or recently active meth lab.

….

Based upon the foregoing, the Court finds that the children's physical and/or mental condition is seriously impaired and seriously endangered as a result of Father and Mother's inability, refusal and/or neglect to supply them with necessary supervision; that their physical and mental health is seriously endangered due to act or omission by Father and Mother; and, that they need care, treatment and/or rehabilitation that … the parties are not likely to accept without the coercive intervention of the court. All three (3) children are Children in Need of Services pursuant to I.C. 34-31-1 & 2. Obviously the coercive intervention of the Court is necessary for Father and Mother to receive services given their denial of their use of amphetamine/ methamphetamine and their denial that they knowingly exposed the children to the serious risks of a meth lab.

Appellants' App. at 100-01. Al.G. and As.G. were placed with S.G., and J.D., Jr., was placed in foster care. Mother and Father now appeal.

# Discussion and Decision

Mother and Father contend that the evidence is insufficient to support the trial court's CHINS adjudication. Indiana courts recognize "that parents have a fundamental right to raise their children without undue influence from the State, but that right is limited by the State's compelling interest in protecting the welfare of children." *In re Ju.L.*, 952 N.E.2d 771, 776 (Ind. Ct. App. 2011). A CHINS proceeding is a civil action in which the State bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010); Ind. Code § 31-34-12-3.

Here the trial court adjudicated the children as CHINS pursuant to Indiana Code Sections 31-34-1-1 and -2. To meet its burden of establishing CHINS status pursuant to Indiana Code Section 31-34-1-1, DCS must prove that the child is under eighteen and that

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> (A) the child is not receiving; and
>
> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

To meet its burden of proving CHINS status pursuant to Indiana Code Section 31-34-1-2, DCS must prove that the child is under eighteen and that

> (1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and

> (2) the child needs care, treatment, or rehabilitation that:

> (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

> (b) Evidence that the illegal manufacture of a drug or controlled substance is occurring on property where a child resides creates a rebuttable presumption that the child's physical or mental health is seriously endangered.

[7] When reviewing the sufficiency of the evidence to support a CHINS adjudication, we will not reweigh the evidence or judge witness credibility. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). We will consider only the evidence favorable to the trial court's judgment and the reasonable inferences drawn therefrom. *Id.* Because no statute expressly requires formal findings in a CHINS factfinding order, and because it appears that neither party in this case requested them pursuant to Indiana Trial Rule 52(A), as to the issues covered by the court's sua sponte findings, we will determine whether the evidence supports the findings and whether the findings support the judgment. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). We may not set aside the findings or

judgment unless they are clearly erroneous. *In re A.C.*, 905 N.E.2d 456, 461 (Ind. Ct. App. 2009). "Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard." *Id.* We review the remaining issues under the general judgement standard, and we will affirm the judgment if it can be sustained on any legal theory supported by the evidence. *S.D.*, 2 N.E.3d at 1287.

[8] With respect to Indiana Code Section 31-34-1-1, Mother and Father argue that there is no evidence that the children's physical or mental condition was seriously impaired or seriously endangered. We disagree. The children were exposed to a meth lab. It is clear that there was a lack of supervision by the parents because As.G. almost drank a cup of chemicals, and Al.G. tested positive for marijuana. The fact that the results from some of the children's hospital checkups came back clear does not mean they were not endangered.

[9] Mother and Father also argue that there is no evidence that the children have needs that would not be met without coercive court intervention. Both parents tested positive for drugs and exposed the children to a meth lab, which demonstrated extremely poor judgment and a lack of respect for the law and the children's safety. The parents' denial of drug use indicates that they are unlikely to accept that they are incapable of providing care to the children while they are using drugs. Mother and Father's argument is essentially an invitation for this Court to reweigh the evidence and reassess witness credibility, which we may not do. In sum, DCS presented sufficient evidence to support the trial

court's determination that the children are CHINS pursuant to Indiana Code Section 31-34-1-1.

[10] With respect to Indiana Code Section 31-34-1-2, Mother and Father maintain that there is no evidence that the children "resided" where the meth lab was found. We need not address this argument because the trial court found that the children were CHINS under both statutes. The judgment of the trial court is affirmed.

[11] Affirmed.

Najam, J., and Robb, J., concur.