## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 12 2016, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of K.W., A.W., and D.W. (Minor Children), Children in Need of Services,

and

D.W. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

August 12, 2016

Court of Appeals Case No. 49A04-1601-JC-9

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Danielle Gaughan, Magistrate

Trial Court Cause Nos. 49D09-1504-JC-1476, -1477, -1478

**Crone, Judge.**

# Case Summary

[1] D.W. ("Father") appeals trial court dispositional orders continuing the adjudication of his three minor children, K.W., A.W., and D.W. (collectively "the Children") as children in need of services ("CHINS"). He claims that the trial court violated his due process rights by adjudicating the Children as CHINS in proceedings involving the Children's mother ("Mother") without giving him an opportunity to be heard. He also maintains that the findings and evidence are insufficient to support the trial court's conclusion concerning the Children's placement with a relative other than Father. Concluding that his due process rights were not violated and that the findings and evidence support the placement, we affirm.

# Facts and Procedural History

[2] K.W., A.W., and D.W. (born in 2001, 2003, and 2005 respectively) were born of the marriage between Father and Mother. In 2007, Mother took the Children from school and relocated with them from South Carolina to Indianapolis. Father remained in South Carolina.

[3] On April 14, 2015, the Department of Child Services ("DCS") received a report alleging that Mother and the Children were living in a home without utilities, that they had to be out of the home within days and had no plan for housing, that the Children did not have food, and that the Children had excessive

absences from school. DCS removed the Children from Mother and placed them in relative care with Mother's aunt ("Aunt"), who had been caring for them for the preceding five years. The family case manager assigned to the case reported speaking to Father by telephone on April 30, 2015, and that he was living in South Carolina and was unaware of the circumstances that had led to the Children's removal.

[4] On May 1, 2015, DCS filed a petition to have the Children designated as CHINS. The CHINS petition alleged that Mother had failed to provide the Children with a safe, stable home environment; that Mother was homeless and unable to provide for the Children's needs; that Mother and the Children had been living in a home with no utilities and very little food; that K.W. had excessive unexcused absences from school; that Mother had failed to meet the Children's medical needs (no medical insurance or updated immunizations); that K.W. had been hospitalized for a suicide attempt and Mother had not continued her mental health treatment; that K.W. had suicidal ideations and had been cutting herself; that Father had not successfully demonstrated the ability or willingness to parent the children and was unable to ensure their safety and well-being while in Mother's care; and that the coercive intervention of the court was necessary to ensure the Children's safety and well-being.

[5] Mother submitted a written admission of the CHINS allegations, and the trial court adjudicated the Children as CHINS. A dispositional hearing was set for June 26, 2015. On June 18, 2015, the trial court sent Father a summons with CHINS petition and advisement of rights. Father did not appear at the hearing,

and the trial court issued a parental participation order concerning Mother. On July 6, 2015, Father signed and dated the advisement of rights.[1]

[6] On August 21, 2015, Father appeared and requested assistance of counsel and a factfinding hearing. The trial court vacated a scheduled default hearing and set Father's factfinding hearing for October 26, 2015. On that date, Father did not appear in person but appeared by counsel. At the outset of the hearing, counsel stated, "Judge, I've spoken with my client extensively, he'd like to enter a waiver to the CHINS case today." Tr. at 4. The trial court accepted the waiver, found that the Children would continue as CHINS, and set a dispositional hearing for December 11, 2015.

[7] At the dispositional hearing, Father appeared by telephone and requested unsupervised visitation with the Children in South Carolina. The trial court denied his request but urged him to engage in telephone conversations with the Children as well as supervised visitation in Indiana. Based on the DCS family case manager's report that the Children said that Father smokes marijuana and fights with his girlfriend, the trial court found a rational basis to order Father's participation in random drug and alcohol screenings and a domestic violence assessment. The trial court issued a dispositional order with findings of fact and

---

[1] The parties dispute the date upon which Father was first notified of the CHINS proceedings, and the record is unclear on this point. However, as discussed herein, Father's subsequent waiver of factfinding amounted to acquiescence in the CHINS determination. Even so, we remind DCS that the better practice is to serve the out-of-state parent at the earliest opportunity in order to ensure that the parent is afforded ample time to respond and participate accordingly.

conclusions thereon, continuing the Children's CHINS status and placement with Aunt and incorporating the predispositional and parent participation orders as well as DCS reports and petitions.

[8] Father now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Father was not denied his right to be heard at a meaningful time and in a meaningful manner.

[9] Father asserts that he was denied due process because the trial court had earlier determined that the Children were CHINS in proceedings involving Mother and denied him the right to be heard. He submits that the error is "so fundamental that no action short of setting aside the prior CHINS finding and disposition could correct it and no objection is required." Appellant's App. at 14.[2] In analyzing this claim, it is important to address the nature and focus of a CHINS determination.

[10] In a CHINS proceeding, the State bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a

---

[2] We note that Father's brief is pejorative in tone and impugns the motives of DCS and the trial court. *See*, *e.g.*, Tr. at 17-18, 20 (accusing DCS of making "misrepresentations" to the trial court and of "presuming that fathers are incapable of taking care of their children" and accusing the trial court of imposing "humiliating and onerous conditions" on him in the "hope that he would not be able to complete the services and the DCS could then use this 'failure' as an additional reason to push for termination."). We remind counsel that "[i]nvectives are not argument, and have no place in legal discussion ...." *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 301 n.3 (Ind. Ct. App. 2014) (quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Muncie & Portland Traction Co.,* 166 Ind. 466, 468, 77 N.E. 941, 942 (1906)), *trans. denied*.

CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). To meet its burden of establishing CHINS status, the State must prove that the child is under age eighteen,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1.

[11] A CHINS designation focuses on the condition of the child rather than on an act or omission by the parent. *N.E.*, 919 N.E.2d at 105. Whereas the acts or omissions of one parent can cause a condition that creates the need for court intervention,

> [a] CHINS adjudication can also come about through no wrongdoing on the part of either parent, e.g., where a child substantially endangers the child's own health or the health of another individual; or when a child is adjudicated a CHINS because the parents lack the financial ability to meet the child's extraordinary medical needs. While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that – a determination that a child is in need of services.

*Id.* (citations omitted). A trial court need not wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 311 (Ind. Ct. App. 2009).

[12] Father alleges that he was denied the opportunity to be heard to contest the CHINS designation. Due process requires that a person be afforded the opportunity to be heard at a meaningful time and in a meaningful manner. *In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012). A parent's right to raise one's children is protected by due process. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003). Due process gives parents the right to a contested factfinding hearing in CHINS proceedings. *K.D.*, 962 N.E.2d at 1259.

[13] As part of his due process argument, Father appears to argue that DCS failed to notify him about any of the proceedings before the Children were designated CHINS on June 26, 2015. In its CHINS petition, DCS alleged that its representative contacted Father by telephone on April 30, 2015, concerning the circumstances surrounding the removal of the children from Mother. Appellant's App. at 57. On June 18, 2015, a summons and advisement of parental rights were sent to Father in South Carolina. On July 6, 2015, Father signed and dated an advisement of parental rights regarding CHINS proceedings. *Id.* at 124. The chronological case summary shows that after he became aware of the CHINS proceedings, he requested and received counsel through the public defender's office, and the trial court vacated a default hearing, proceeded with pretrial conferences on September 18 and October 2, 2015, and held a factfinding hearing on October 26, 2015.

[14]     Father asserts that even if notice was established, he was nevertheless denied due process by the fact that the CHINS determination had already been made *before* the trial court conducted his factfinding hearing. He cites as support *In re S.A.*, 15 N.E.3d 602, 610 (Ind. Ct. App. 2014), *clarified on reh'g*, 27 N.E.3d 287 (2015), *trans. denied* (2015). In *S.A.*, DCS removed a child from the mother after a report that the mother was using heroin and was in a violent relationship with her boyfriend. The child was placed with the grandmother. *Id*. at 605. DCS filed a CHINS petition and attempted to contact the child's father via Facebook. *Id.* The father was on active duty in the U.S. Navy and was stationed in Texas. When he became aware of the proceedings, he requested counsel, denied the CHINS allegations, and sought to establish paternity. Before the paternity test results were available, the trial court adjudicated the child a CHINS. Once paternity was established, the father requested a factfinding hearing. Meanwhile, the father moved back to Indiana and had daily supervised visitation with the child. *Id*. at 606. After the factfinding hearing, the trial court issued an order continuing the CHINS adjudication. The father appealed, claiming insufficiency of evidence, and this Court reversed on sufficiency grounds but addressed sua sponte its due process concerns based on the fact that the child had been adjudicated a CHINS "as to [the] father" before the father had his factfinding hearing. *Id*. at 608-10. The *S.A.* court concluded that although the CHINS determination focuses on the condition of the child and should therefore not be issued *as to* a specific parent, a separate analysis is necessary where allegations are being made against both parents and one of them denies those allegations. *Id*. at 609 (citing *N.E.*, 919 N.E.2d at 105-

06 and *K.D.*, 962 N.E.2d at 1256-57).[3]  In addressing its reasons for continuing the child's CHINS status, the trial court emphasized the father's post-traumatic stress disorder, failure to establish paternity sooner, and inexperience in parenting.  *Id.*

[15]  At first glance, *S.A.* bears factual similarities to this case: an out-of-state father, a CHINS designation before the father's factfinding hearing, and allegations of shortcomings by each of the parents.  However, here, the CHINS petition did not raise any allegations against Father other than his inability to protect the Children while they were in Mother's care.[4]  Also, Father wanted only unsupervised visits in South Carolina.  Most importantly, Father expressly waived the factfinding and now complains that the continuing of the CHINS

---

[3] On rehearing, the *S.A.* court clarified its original opinion as follows:

> When the CHINS adjudication *can* involve both parents at the same time, it *should* involve both parents at the same time so there is one adjudication as to all facts pertaining to the entire matter.  If multiple hearings are unavoidable, then the trial court should, if at all possible, refrain from adjudicating the child a CHINS until evidence has been heard from both parents.  And if an adjudication is unavoidable before evidence has been heard from the second parent, then the trial court must give meaningful consideration to the evidence provided by the second parent in determining whether the child remains a CHINS.

*S.A.*, 27 N.E.3d at 292-93 (internal citation and quotation marks omitted), *opinion on reh'g*.

[4] As for the Children's report of Father smoking marijuana and fighting with his girlfriend, these allegations were not specified in the CHINS petition but were considered as part of Father's parent participation order.  To the extent that Father now objects on the basis of hearsay, we find that he has failed to preserve this alleged error and that hearsay is nevertheless admissible during a dispositional hearing.  *See In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014) ("Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review."); *see also K.D.*, 962 N.E.2d at 1259 (stating that at dispositional hearing, court can admit evidence otherwise excludable as hearsay).

designation amounts to a denial of his right to be heard in a meaningful time and meaningful manner.

[16] We disagree. Due process required the trial court to conduct a factfinding hearing, which it did. At the beginning of the factfinding hearing, Father's counsel stated, "Judge, I'd spoken with my client extensively, he'd like to enter a waiver to the CHINS case today." Tr. at 5.[5] The factfinding hearing afforded Father the opportunity to contest the CHINS determination and to present evidence that he was neither using marijuana nor engaging in any confrontational or abusive conduct toward his girlfriend. By waiving the right to present evidence during that hearing, he forfeited that opportunity. Based on the foregoing, we conclude that Father was not denied due process.

## Section 2 – The findings and evidence are sufficient to support the trial court's decision to continue the Children's placement with Aunt.

[17] Father challenges the sufficiency of the findings and evidence to support the CHINS placement determination. When reviewing the sufficiency of evidence, we give due regard to the trial court's ability to assess the credibility of witnesses. *In re Des.B.*, 2 N.E.3d 828, 836 (Ind. Ct. App. 2014). We neither reweigh evidence nor judge witness credibility; rather, we consider only the

---

[5] At the dispositional hearing on December 11, 2015, Father's counsel stated with respect to the Children's placement with Aunt, "We have a father that wants the girls. The reason that he waived was that he wanted [them] to stay with their aunt." *Id*. at 23.

evidence and reasonable inferences most favorable to the trial court's decision. *K.D.*, 962 N.E.2d at 1253.[6] Where the trial court issues findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.P.*, 949 N.E.2d 395, 400 (Ind. Ct. App. 2011). We consider first whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id.* "We must accept the ultimate facts as stated by the trial court if there is evidence to sustain them." *Id.*

[18] Father challenges the sufficiency of the findings with respect to the Children's placement with Aunt, characterizing them as merely boilerplate. Indiana Code Section 31-34-19-10(a) requires the trial court to include in the dispositional decree written findings and conclusions upon the record concerning the child's needs for "care, treatment, rehabilitation, or *placement*" and the efforts to "reunite the child with the parent, guardian, or custodian."[7] (Emphasis added.) Subsection (b) of the statute allows the trial court to incorporate into

---

[6] In his brief, Father claims that "the deferential standard of review does not have any legitimate foundation under Indiana Law." Appellant's Br. at 12. Citing a law review article as support, he posits that we should apply a de novo standard when reviewing CHINS determinations. We are bound by our supreme court's precedent. *Grabill Cabinet Co., v. Sullivan*, 919 N.E.2d 1162, 1167 (Ind. Ct. App. 2010).

[7] The statute also requires the trial court to issue findings on the need for the participation by the parent, guardian, or custodian in the child's care plan; efforts to prevent removal; the family services offered and provided; the court's reasons for the disposition, and whether the child has dual status under the statute. Ind. Code § 31-34-19-10(a)(2) through -(a)(6). Father does not challenge the trial court's findings on these matters.

the dispositional decree a finding or conclusion from the predispositional report.

[19] Here, the trial court ordered that the children "continue[] in current placement" in "relative care," with a permanency plan of "reunification with parent(s)." Appellant's App. at 48. The dispositional order incorporated Father's parent participation order and expressly adopted DCS's recommendations as listed in the predispositional order. *Id*. These include the following placement recommendations:[8]

> a. …. The Children have been placed with Aunt who is their maternal great-aunt.
>
> b. …. This is the least restrictive placement for [] the Children as the placement is capable of meeting the children's needs.
>
> c. …. This least interferes with the family autonomy for the Children not only because the placement is with their maternal great-aunt, but also because the environment is safe and stable.
>
> d. …. This [is] the least disruptive family life for the Children because this environment provides safety, stability and allows the Children to still have a connection to their family.
>
> e. …. This is the least restraint on the freedom of [] the Children as well as Mother since this placement allows Mother to visit with the children. The placement also supervises the visits between the Children and Mother which allows for visits to happen more frequently.

---

[8] To the extent that the predispositional report, dispositional order, and other court documents contain proper names, we have replaced those references with the designations indicated earlier in this opinion.

f. …. The placement of the Children provides reasonable opportunity for the Children because it is a relative placement and the relative continues to promote the closeness of Mother and the Children.

g. …. The placement is consistent with the safety and best interests of the Children because the placement provides an environment that is safe and provides stability.

3. Placement with the Children's suitable and willing blood or adoptive relative caretaker, including a non-custodial parent, grandparent, aunt, uncle or adult sibling has been considered and placed with [relative]. A criminal history check has been conducted and the results of the check are as follows:
Aunt:
A criminal history check has been conducted and the results of the check are as follows:
Criminal history checked was appropriate, and the Children were able to be placed with this relative.
Finger prints: Qualified
Sex offender: No history
Criminal history: No history

*Id*. at 97-98.

[20]    These findings are sufficient to support the Children's continued placement with Aunt. As for the evidence supporting the placement decision, Father was afforded the opportunity to present evidence to contest the Children's continued placement with Aunt instead of with him but forfeited it when he waived factfinding. He cannot now complain that the trial court failed to consider his caregiving qualities as compared to Aunt's.

Finally, Father argues that, for all practical purposes, the CHINS finding will result in the termination of his parental rights. We disagree. The transcript from the dispositional hearing reveals that the trial court attempted to accommodate and give helpful advice to Father as to how he can avoid that precise outcome:

> THE COURT: Well, here's what I'm gonna do. I'm, I'm not gonna authorize unsupervised … Well, I'm not gonna order unsupervised parenting time for father. I'll put the authorization out there for him to have unsupervised time. When, on the, on positive recommendations of DCS, Guardian ad Litem and service providers, but I'm gonna leave it to the team to decide when that's appropriate and, right, now, sir, you're … as it stands now, you can't take the girls back to South Carolina …. You can come up here and visit.
>
> ….
>
> Okay. Sir, I suggest that you continue to talk to your children on the phone. Try and schedule as many visits up here as you can. Trying to re-establish that relationship.
>
> ….
>
> I'm gonna direct you to talk to your attorney. I understand your position. Right now, the decision I'm making, I understand that you're their father and it may be that, at some point, we are sending those kids to South Carolina, but I need a little bit more information …
>
> ….
>
> You need to participate in services, you need to stay in phone

contact with your, your kids, and when you're in Indianapolis, you need to schedule visits and we'll see where we are.

Tr. at 22, 25-26.

[22] Simply put, Father was not denied due process. He was given the opportunity to be heard, and he forfeited the opportunity by waiving factfinding. The findings and evidence are sufficient to support the Children's continued placement with Aunt. Accordingly, we affirm.

[23] Affirmed.

Najam, J., and Robb, J., concur.