## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 20 2016, 7:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Debra S. Andry
Jennifer G. Schlegelmilch
Lawrence County Public Defender
Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of J.M. (Minor Child), | December 20, 2016 |
| Child in Need of Services, | Court of Appeals Case No. 47A01-1606-JC-1299 |
| and, | Appeal from the Lawrence Circuit Court |
| S.M. (Mother) and J.M. (Father), | The Honorable Andrea K. McCord, Judge |
| *Appellants-Respondents,* | The Honorable John M. Plummer, III, Referee |
| | Trial Court Cause No. 47C01-1601-JC-1 |

v.

Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Barnes, Judge.**

# Case Summary

S.M. ("Mother") and Ja.M. ("Father") (collectively, "Parents") appeal the trial court's order finding their daughter, J.M., to be a child in need of services ("CHINS"). We affirm.

# Issues

Parents raise two issues, which we restate as:

I.      whether the trial court abused its discretion by admitting evidence concerning the earlier CHINS proceeding regarding Mother's daughter, J.B.; and

II.     whether the evidence is sufficient to prove J.M. is a CHINS.

# Facts

On July 27, 2015, the Department of Child Services ("DCS") removed nine-year-old J.B. from the care of Parents due to physical abuse. Father is her step-father.[1] DCS filed a CHINS petition, which alleged:

> [J.B.] suffered injuries to her eyes, which appeared to be consistent with inflicted injuries. [Parents] were the only caregivers present when the injury occurred. [J.B.] has had past inflicted bruising and disclosed to her grandmother that [Father] hit her. [Parents] both admitted to "popping" [J.B.] multiple times on the head and that [Father] continued "popping" her when [J.B.] got into a "fetal position." [Father] also admitted to making [J.B.] do "situps," while holding her wrists and banging her head off the ground.

State's Ex. 1 p. 1. DCS referred Parents for home based services, but Parents were not compliant. During October and November 2015, they left six meetings early, and in December 2015, they failed to attend any meetings. Father failed to attend supervised visits with J.B. on October 30, 2015, and November 15, 2015, and Parents canceled their visit on November 20, 2015. A fact-finding hearing was scheduled for January 8, 2016.

On December 31, 2015, J.M. was born to Parents, and DCS immediately removed her from Parents' care. DCS filed a CHINS petition regarding J.M. on January 4, 2016, and alleged that a CHINS petition had been filed regarding

---

[1] J.B.'s biological father is deceased.

J.B., that Parents had been non-compliant with services, and that the environment in Parents' home endangered J.M.'s physical and emotional well-being.

[5] During a meeting on January 25, 2016, to discuss Parents' participation in services in J.B.'s CHINS action, Father became angry and beat his fist on the table. Father said that he did not have anger issues, that he did not need services, and that he would not participate in them unless ordered to do so. During the meeting, Mother agreed with Father and was "vocal." Tr. p. 55. They were "both visibly upset." *Id.*

[6] On February 10, 2016, the trial court entered an order finding that J.B. was a CHINS. The trial court found:

> [J.B.'s] health and safety was seriously endangered as the result of physical abuse and neglect. The evidence reveals that [J.B.], nine years old at the time of the fact finding hearing, has serious emotional issues which [Parents] are not able to properly address without the coercive intervention of the Court. [Parents] have admitted to hitting [J.B.] in the face when she misbehaves. [Father] admitted that he has smacked [J.B.] in the mouth multiple times as she tried to protect her face with her arms and as she got into the fetal position. [J.B.] has sustained significant bruising that was likely caused by physical abuse. [Father] has anger management problems that he needs to address with a professional and which have not been sought prior to DCS and court intervention. [J.B.] is behind in school because she has never had a formal education. Only after [J.B.] was removed from parental care by DCS did [J.B.] become enrolled in a formal school setting.

State's Ex. 3 p. 5. After J.B.'s adjudication as a CHINS, Parents started to participate more in their services.

[7] A fact-finding hearing regarding J.M.'s CHINS action was held on March 4, 2016. Parents objected to the admission of evidence regarding J.B.'s CHINS action, but the trial court overruled the objection. The trial court granted DCS's CHINS petition regarding J.M. and found:

> DCS has proved by a preponderance of the evidence that pursuant to I.C. 31-34-1-1, [J.M.], born December 31, 2015, is a child [in] need of services as alleged in the petition. [J.M.'s] physical or mental condition is seriously impaired or seriously endangered as a result of evidence supporting and surrounding the parents' prior and current involvement with DCS in the case regarding [J.M.'s] half-sibling, [J.B.]. [J.B.] remains removed from parental care as a result of the likelihood that she was physically abused by Mother and [Father]. The acts and omissions by [Parents] with regard to [J.M.'s] older sibling, created a CHINS condition for [J.M.] (i.e. are detrimental to the well-being of [J.M.]), which the Court has serious concerns that such actions and conditions have not been fully remedied, and will not be, in the absence of Court intervention.

> If the Court is unable to ensure the safety of [J.M.'s] older half-sibling while in parental care due to the likelihood of physical abuse perpetrated against her by [Parents], then it would be absurd for the Court to find that [J.M.], an infant, would be safe from abuse in the home. The Court has the same safety concerns for [J.M.] as it has in the active CHINS cases [sic] regarding [J.B.]. The Court has additional concern for [J.M.] in that unlike her older half-sibling, [J.M.] is non-verbal, incapable of communicating inappropriate adult behavior.

> DCS has proved by a preponderance of the evidence that [J.M.] needs care that is unlikely to be provided or accepted without the coercive intervention of the Court. Although now participating in services, Mother and Father have previously made statements and have acted in ways which indicate that they believe the services provided to them are unnecessary.
>
> For these reasons, the Court finds that it is in the best interests of [J.M.] that the Court adjudicate her a [CHINS].

Appellants' App. Vol. II pp. 37-38. Parents now appeal.

# Analysis

### I. Admission of Evidence

Parents argue that the trial court abused its discretion by admitting evidence of J.B.'s CHINS action during J.M.'s CHINS fact-finding hearing. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Parents argue that the trial court should not have admitted evidence concerning J.B.'s CHINS action. Specifically, Parents contend that the trial court should not have admitted the CHINS petition, order on detention hearing, and order on the fact-finding hearing in J.B.'s case. Parents argue that the evidence was "extremely prejudicial" and only involved a single incident that "was neither

close in time nor sufficient to establish character of the parents as to how Mother or Father would treat a newborn." Appellant's Br. p. 18.

[10] Indiana Code Section 31-34-12-5 provides that such evidence is admissible in CHINS actions:

> Evidence that a prior or subsequent act or omission by a parent, guardian, or custodian injured or neglected a child is admissible in proceedings alleging that a child is a child in need of services to show the following:
>
> (1) Intent, guilty knowledge, the absence of mistake or accident, identification, the existence of a common scheme or plan, or other similar purposes.
>
> (2) A likelihood that the act or omission of the parent, guardian, or custodian is responsible for the child's current injury or condition.

Ind. Code § 31-34-12-5 (formerly Ind. Code § 31-6-7-13 (repealed by Pub. L. No. 1-1997, § 157 (eff. July 1, 1997)). We have held that this statute allows "evidence in CHINS proceedings of a parent's prior acts or omissions toward his children in conjunction with subsequent injuries sustained by another child in the parent's care." *Matter of J.L.V., Jr.*, 667 N.E.2d 186, 190 (Ind. Ct. App. 1996) (discussing the prior version of the statute). Further, "[t]he standards set forth in [the CHINS statutes] contemplate that a parent's past, present, and future ability to provide sufficient care for his or her child forms the basis for a CHINS adjudication and that the parent's character is an integral part of assessing that ability." *Id.* Consequently, the evidence of J.B.'s CHINS action

was admissible to show Parents' character and ability to care for J.M. The trial court properly admitted the evidence concerning J.B.'s CHINS action.

## II. Sufficiency

[11]     Parents next challenge the trial court's finding that J.M. is a CHINS. "A CHINS proceeding is a civil action; thus, 'the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code.'" *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (quoting *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*

[12]     "There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS." *Id.* DCS must first prove the child is under the age of eighteen. *Id.* DCS must then prove that at least one of eleven different statutory circumstances exists that would make the child a CHINS. *Id.* Finally, "in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court." *Id.*

[13]     Here, the trial court found J.M. to be a CHINS based on Indiana Code Section 31-34-1-1, which provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1)     the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2)     the child needs care, treatment, or rehabilitation that:

(A)     the child is not receiving; and

(B)     is unlikely to be provided or accepted without the coercive intervention of the court.

[14]    Parents argue that DCS failed to present evidence that their actions or inaction seriously endangered J.M., that they were meeting J.M.'s needs before she was removed, and that coercive intervention of the trial court in J.M.'s case was unnecessary.  According to Parents, they were appropriately caring for J.M. after her birth, and the CHINS finding was based solely on the prior CHINS finding regarding J.B.

[15]    Parents' argument that they were properly caring for J.M. is merely a request to reweigh the evidence, which we cannot do.  We have held that the trial court properly admitted evidence of J.B.'s CHINS action, which was pending a fact-finding hearing at the time of J.M.'s birth.  J.B.'s CHINS action was based primarily on Parents' physical abuse of J.B.  At the time of J.M.'s birth, Parents

were refusing to participate in services, and it was evident that Father's anger issues persisted. Parents began participating in the services only after J.B. was found to be a CHINS and parents were ordered to do so. At the time of J.M.'s CHINS fact-finding hearing, Parents had only been participating in services for a short time, and much more progress was necessary. Given the physical abuse of J.B., Parents' earlier lack of cooperation, and Father's continuing anger issues, the trial court properly found J.M. to be a CHINS.

## Conclusion

The trial court properly concluded that J.M. is a CHINS. We affirm.

Affirmed.

Kirsch, J., and Robb, J., concur.