## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of D.K., Child in Need of Services,

N.B. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 21, 2016

Court of Appeals Case No.
49A05-1607-JC-1641

Appeal from the Marion Superior Court

The Honorable Danielle P. Gaughan, Magistrate

The Honorable Marilyn A. Moores, Judge

Trial Court Cause No.
49D09-1601-JC-330

**Vaidik, Chief Judge.**

# Case Summary

[1]     N.B. (Mother) contends that the evidence is insufficient to support the juvenile court's determination that her son is a child in need of services (CHINS) because his physical or mental condition is seriously impaired or endangered as a result of Mother's failure to provide him with necessary shelter.  Finding the evidence sufficient, we affirm.

# Facts and Procedural History

[2]     D.K. was born June 7, 2000.  He lives with Mother, who has cerebral palsy and mental-health issues, and his two adult sisters in Indianapolis.[1]  D.K. is a special-needs child with several diagnoses, including hydrocephalus, cerebral palsy, epilepsy, severe asthma, autism, developmental delays, ADHD, and scoliosis.  D.K. sees several medical specialists, including a pulmonologist, pediatrician, neurologist, and physical therapist; he also goes to a cerebral-palsy clinic.  In the eighteen-month period before the fact-finding hearing in this case, D.K. had been to the emergency-room three times, twice for seizures and once for an asthma attack; the asthma attack required a multi-day hospital stay.

[3]     In March 2015, the Department of Child Services (DCS) investigated a report that Mother's house was unsanitary.  Specifically, there were roaches and roach droppings throughout the kitchen, including inside the refrigerator, and trash

---

[1] D.K.'s father was not located during the CHINS proceeding and is not part of this appeal.

throughout the house. Mother confirmed that she had a problem with roaches and mice and indicated that she wanted help caring for her home and D.K. Because Mother had no DCS history and was willing to participate in services, DCS entered into an informal adjustment (IA) with Mother. *See* Ind. Code ch. 31-34-8. Pursuant to the IA, Mother agreed to keep her home "sanitary" and "clean" and to participate in the Choices program. Ex. 1. The Choices program provided Mother with homemaker/parent-aide and extermination services in order to get her house clean and develop her organizational skills. The juvenile court approved the IA for six months.

[4] Family Case Manager Erma Watson worked with the family during the IA period. Mother, however, made little progress during this time. FCM Watson explained that there may have been a day where Mother's house was fairly clean (but, notably, never free of roaches). However, when she would return a week later, "the home would be back to deplorable conditions." Tr. p. 30. FCM Watson discussed with Mother how the conditions of her home could affect a child with asthma; Mother agreed and said she would "do better." *Id.* at 35.

[5] Marsha Mora, a homemaker/parent aide with Seeds of Life, also met with Mother on numerous occasions during the IA period and taught her how to clean and organize her house. Mora took photos of Mother's home in July 2015, describing the conditions as "deplorable." *Id.* at 68.

[6] DCS submitted a report to the juvenile court describing Mother's lack of progress. On August 13, 2015, the court, based on DCS's report and the photos, issued a finding that "the condition of the home poses significant risks to the health, safety, and welfare of the special needs child involved in this matter." Ex. 4. The IA was unsuccessfully closed on September 4. Ex. 6. That same day, DCS filed a petition alleging that D.K. was a CHINS. Ex. 70, 71. At the initial hearing, the court allowed D.K. to remain with Mother, provided that Mother complete the extermination of her house and participate in home-based therapy, home-based case management, and parent mentoring. The CHINS petition was ultimately dismissed because the fact-finding hearing was scheduled outside the statutory timeframe. *See* Ind. Code § 31-34-11-1. Around the time that the CHINS petition was filed, a new family case manager, Cassandra Hopper, took over the case from FCM Watson. According to FCM Hopper, whenever she went to Mother's house there were cockroaches "all over," particularly on the food inside the refrigerator, water in the carpet, and clothes and trash piled everywhere. Tr. p. 50.

[7] On January 28, 2016, DCS filed a second petition alleging that D.K. was a CHINS pursuant to Indiana Code section 31-34-1-1 based on Mother's failure to provide D.K. "with a safe, sanitary, and appropriate living environment" because her house was "cluttered with trash, clothes, and mold" and infested with roaches. Appellant's App. p. 32. At this time, there was a new family case manager assigned to the case, Kennedy Udokporo.

[8] The fact-finding hearing was held on April 18, 2016. Parent aide Mora testified that she had been re-referred to Mother's case in February 2016 to conduct pop-ins at Mother's house two or three times a week to check the status of her house (but not to help with cleaning). Mora took photos of Mother's house on April 7, 2016, and noted that it looked "better than I have ever seen it throughout the entire case." Tr. p. 75. But Mora said that when she returned to Mother's house just five days later on April 12, it looked "bad"; and when she returned the day before the hearing, it looked "worse." *Id.*

[9] Angela Johnson, a case manager with Stepping Stones, also testified. Johnson started working with Mother in late February or early March 2016 to help Mother with cleaning. When Johnson first started helping Mother, she observed "roaches dropping from the ceiling." *Id.* at 84. When Johnson returned to Mother's house the week before the hearing, she did not see roaches dropping from the ceiling, but she did see roach feces on the ceiling. Mother's house was also cluttered and unclean. Johnson, like FCM Watson, warned Mother that the condition of her house, particularly the roach feces, could exacerbate D.K.'s asthma; Mother's response was that she would "get it together." *Id.* at 87. Mother, however, did not make much progress because she was inconsistent with her appointments.

[10] Shari Grizzle, a social worker and therapist with Stepping Stones, also testified. She worked with Mother from February to March 2016. Mother was supposed to meet with Grizzle twice a week to work on her organization and communication skills. The sessions were at Mother's house, which Grizzle

described as "unclean, filthy, [and] roach-infested." *Id.* at 96. Grizzle ultimately closed Mother's case due to missed appointments.

[11] FCM Udokporo testified that he became the family's case manager in January 2016. He explained that he had been inside Mother's house on three occasions (although he tried to come inside on more occasions) and that on each occasion the house was "dirty" with "clutter everywhere." *Id.* at 110. FCM Udokporo believed that the condition of the house was not conducive for D.K.'s health. *Id.* at 112.

[12] Finally, the guardian ad litem, Andrea Manning-Dudley, testified that it was in D.K.'s best interests for the court to continue to be involved in the case.

[13] In May 2016, the juvenile court issued an order finding D.K. to be a CHINS. In particular, the court found:

> 15. From the filing of the CHINS petition on September 4, 2015 until the dismissal of the petition on January 11, 201[6], Mother continued to struggle with maintaining the cleanliness of the home. Mother's home was below minimum standards with bugs all over the home and mold and water in the carpet.
>
> * * * * *
>
> 17. Since the filing of the second CHINS petition, services have continued to be in place to assist Mother. Mother participated in therapy at first but in March of 2016 she missed five appointments. Mother was inconsistent with appointments with her home based case manager, Angela Johnson. The home

continued to be unclean and cluttered and bug infested. Sometimes cockroaches would drop from the ceiling.

Appellant's App. p. 63. Accordingly, the court concluded:

> 19. **The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of the child's parent to supply the child with necessary shelter.** The condition of Mother's home is chronically deplorable. There are periods of improvement but progress is only temporary. [D.K.] is a special needs child with several diagnoses including severe asthma. The condition of the home poses significant risks to his health and welfare. Mother is aware of the risks but is overwhelmed by the demands of the care [D.K.] requires and is unable to maintain a healthy and safe environment for [D.K.].
>
> 20. The coercive intervention of the Court is necessary to ensure the child's safety and well-being. Mother has not consistently participated in home based therapy and home based case management and the condition of the home is chronically deplorable. Mother has shown a pattern of sometimes making improvements to the condition of the home but cannot maintain the cleanliness of the home. DCS has been involved with this family since March of 2015 and the condition of the home continues to be unsanitary, cluttered with trash and clothing.

*Id.* at 63-64 (emphasis added). In its dispositional order, the court placed D.K. with Mother and ordered Mother to participate in home-based case management, home-based therapy, and homemaker/parent-aide services.

[14] Mother now appeals.

# Discussion and Decision

[15]  Mother contends that there is insufficient evidence to support D.K.'s CHINS adjudication. When reviewing the sufficiency of the evidence for a trial court's CHINS determination, we neither reweigh the evidence nor judge the credibility of the witnesses. *In re K.D.,* 962 N.E.2d 1249, 1253 (Ind. 2012). Instead, we consider only the evidence that supports the trial court's decision and any reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court is clearly erroneous. *Id.*

[16]  A CHINS adjudication under Indiana Code section 31-34-1-1 requires three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and that those needs are unlikely to be met without State coercion. *In re S.D.,* 2 N.E.3d 1283, 1287 (Ind. 2014), *reh'g denied.* In full, the statute provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1. DCS must prove these elements by a preponderance of the evidence. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010).

[17] Here, Mother challenges only the first element, that is, whether DCS proved by a preponderance of the evidence that Mother's actions or inactions seriously impaired or endangered D.K.[2] *See* Appellant's Br. p. 15 ("Mother challenges the first element: whether Mother's actions or inactions have seriously endangered the child."). Mother, assuming that the trial court based its CHINS determination on the fact that cockroaches made D.K.'s asthma worse, essentially argues that DCS should have presented expert medical testimony at the hearing to prove that the cockroaches actually made D.K.'s asthma worse. *Id.* at 18 ("Here, the potential effect of cockroaches on D.K.'s medical condition was a scientific issue beyond the knowledge of a lay person . . . ."). However, the juvenile court did not make such a narrow finding when it determined that Mother's actions or inactions seriously impaired or endangered D.K. Rather, the court found the conditions of Mother's home to be "chronically deplorable," including cockroaches falling from the ceiling, trash and clutter

---

[2] In a footnote, Mother also argues that the trial court erred by admitting certain testimony because it was hearsay. *See* Appellant's Br. p. 17 n.4. Specifically, Mother points to testimony from FCM Watson in which she vaguely referenced "information" that states "a home with cockroaches could affect a child that has asthma." Tr. p. 35. Even if the trial court erred by admitting this testimony as hearsay, we find that it is harmless. *See Davis v. Garrett*, 887 N.E.2d 942, 947 (Ind. Ct. App. 2008) ("[E]rrors regarding the admission of evidence—including hearsay—are harmless unless they affect the substantial rights of a party."), *trans. denied*.

throughout the home, and mold and water in the carpet. The court noted that D.K. is a special-needs child with several diagnoses, including severe asthma. Based on these unchallenged findings, the court concluded that "[t]he condition of the home poses significant risks to [D.K.'s] **health and welfare**." (Emphasis added). Based on the conditions of Mother's home, as described by the testimony of multiple witnesses at the hearing and illustrated by numerous photos, we find this broad conclusion to be reasonably based on the evidence. We therefore affirm the court's determination that D.K. is a CHINS because his physical or mental condition is seriously impaired or endangered as a result of Mother's failure to provide him with necessary shelter.

[18] Affirmed.

Bradford, J., and Brown, J., concur.